437 Pa. Superior Ct. 258 (1994)
649 A.2d 961
COMMONWEALTH of Pennsylvania, Appellant
v.
Raymond BERRYMAN, Appellee.
Superior Court of Pennsylvania.
Argued April 18, 1994.
Filed November 1, 1994.
*262 George S. Leone, Asst. Dist. Atty., Philadelphia, for the Com., appellant.
Peter Rosalsky, Asst. Public Defender, Philadelphia, for appellee.
*263 Before CAVANAUGH, WIEAND, MCEWEN, CIRILLO, BECK, TAMILIA, KELLY, POPOVICH and SAYLOR, JJ.
KELLY, Judge:
In this appeal we must determine whether persons who have been charged with violating 35 P.S. § 780-113(a)(14), (30), or (37) and who plead guilty or nolo contendere to any of these subsections are barred under 35 P.S. § 780-117(1)(vi) from being sentenced to probation without verdict. Our review requires us to interpret 35 P.S. § 780-117(1). After careful consideration, we hold that 35 P.S. § 780-117(1)(vi) does prohibit a person who has pled guilty or nolo contendere to a charge of violating 35 P.S. § 780-113(a)(14), (30), or (37) from being sentenced to probation without verdict. Therefore, we vacate the appellee's, Raymond Berrymen's, sentence of probation without verdict and remand for resentencing.
Appellee, Raymond Berryman, sold two vials of crack cocaine to an undercover police officer on August 29, 1992. Appellee was arrested by backup officers. Appellee was charged with violating subsection (a)(30) of 35 P.S. § 780-113. Appellee pled nolo contendere to the charge. This was appellee's first arrest. Appellee has been certified as drug dependent. At sentencing, appellee received probation without verdict.
The Commonwealth filed a timely petition to modify the sentence which was denied. Timely notice of appeal was filed.
On appeal, the Commonwealth raises in an unsophisticated legal and editorial manner the following issue:
CAN DEFENDANTS, WHO WERE CHARGED WITH DRUG DEALING AND WHO CONCEDED THEIR GUILT BY PLEADING NO CONTEST, REWRITE SECTION 17(1)(VI) AND RECEIVE PROBATION WITHOUT VERDICT, EVEN THOUGH THAT SECTION EXPRESSLY PROHIBITS SUCH LENIENT TREATMENT FOR ANY DEFENDANT "WHO WAS CHARGED" WITH DRUG DEALING, AND EVEN THOUGH THE IMPROPER CONSTRUCTION OF THE SECTION *264 ADOPTED BELOW VIOLATES BASIC RULES OF STATUTORY CONSTRUCTION AND RESULTS IN AN ABSURD INTERPRETATION THAT PERMITS THE INNOCENT TO BE PENALIZED AND THE GUILTY REWARDED?
Commonwealth's Brief at 4.
In essence, the Commonwealth argues that appellee received an illegal sentence as 35 P.S. § 780-117(1)(vi) ("Section 17(1)(vi)") bars him from receiving probation without verdict. Appellee, however, contends that section 17(1)(vi) does not bar a sentence of probation without verdict because he has not been charged with violating 35 P.S. § 780-113(14), (30), or (37) in a previous, unrelated charge. Therefore, appellee concludes, the sentence imposed was not illegal and was within the discretion of the trial court.
Section 17(1) states in full:
§ 780-117. Probation without verdict
Except as provided in clause (1) of this subsection, the court may place a person on probation without verdict if the person pleads nolo contendere or guilty to any nonviolent offense under this act and the person proves he is drug dependent. For the purposes of proving drug dependency, the person must present the testimony of a physician trained in the field of drug abuse. The term of probation shall be for a specific time period not to exceed the maximum for the offense upon such reasonable term and conditions as the court may required. The following shall apply:
(1) The following persons shall be ineligible for probation without verdict:
(i) Any person who has previously been convicted of an offense under this act or similar act of the United States or any other state.
(ii) Any person who has been convicted of a misdemeanor or felony in this Commonwealth or an equivalent crime under the laws of any other state.
(iii) Any person who has been placed on Accelerated Rehabilitative Disposition where the person was charged *265 with a violation of this act or the commission of a misdemeanor or felony in this Commonwealth.
(iv) Any person who is charged with or has pleaded guilty or nolo contendere to multiple offenses which are based on separate conduct or arise from separate criminal episodes such that those offenses could be tried separately in accordance with 18 Pa.C.S.A. § 110 (relating to when prosecution barred by former prosecution for different offense).
(v) Any person who is a dangerous juvenile offender under 42 Pa.C.S. § 6302 (relating to definitions) or who was adjudicated delinquent for conduct which would constitute a violation of clause (30) or (37) of subsection (a) of section 13 of this act.
(vi) Any person who was charged with violating clause (14), (30) or (37) of subsection (a) of section 13 of this act.[[1]]
35 P.S. § 780-117(1) (footnote omitted) (emphasis added).
The present controversy centers on the words "was charged" in subsection (vi) of section 17(1). The Commonwealth *266 posits that "was charged" should be interpreted to mean "charged in the proceeding in which the trial court wishes to impose a sentence of probation without verdict." Appellee contends that "was charged" refers to "previous, unrelated charges" and only a second charge of violating 35 P.S. § 780-113(a)(14), (30), or (37) would render a defendant ineligible to receive probation without verdict.
This opinion is the first to consider the interpretation of section 17(1)(vi) since the statute was adopted in 1992.[2] Superficially, subsection (vi) of section 17(1) appears susceptible to two different meanings, thus, requiring us to interpret section 17(1)(vi).
In a case involving a question of statutory interpretation, we are subject to the rules of statutory construction enacted by the legislature and embodied in 1 Pa.C.S.A. § 1901 et seq. Commonwealth v. Dickerson, 533 Pa. 294, 621 A.2d 990 (1993); Commonwealth v. Grayson, 379 Pa.Super. 55, 549 A.2d 593 (1988); 1 Pa.C.S.A. § 1901. In ascertaining the meaning of a statute, it is our obligation to determine the intent of the legislature and give effect to that intention. Commonwealth v. Runion, 427 Pa.Super. 217, 628 A.2d 904 (1993); Commonwealth v. Lundberg, 422 Pa.Super. 495, 619 A.2d 1066 (1993); Commonwealth v. Grayson, supra; 1 Pa. C.S.A. § 1921(a).
We are to give the words of a statute their plain and ordinary meaning. Commonwealth v. Neckerauer, 421 Pa.Super. 255, 617 A.2d 1281 (1992); Commonwealth v. Johnson, 417 Pa.Super. 636, 612 A.2d 1382 (1992); Commonwealth v. Grayson, supra. The words are to be considered in their grammatical context. 1 Pa.C.S.A. § 1930. The scope of "grammatical context" includes the tenses of verbs used in a *267 statute. See Commonwealth v. Kimmel, 523 Pa. 107, 565 A.2d 426 (1989) (use of the word "violating" means a present violation).
[S]ections of statutes are not to be isolated from the context in which they arise such that an individual interpretation is accorded one section which does not take into account the related sections of the same statute. Statutes do not exist sentence by sentence. Their sections and sentences comprise a composite of their stated purpose.
Commonwealth v. Lurie, 524 Pa. 56, 60, 569 A.2d 329, 331 (1990) (quoting Commonwealth v. Revtai, 516 Pa. 53, 63, 532 A.2d 1, 5 (1987)). An interpretation of the language in a section of a statute must remain consistent throughout the statute. See id.
Additionally, where a section of a statute contains a given word, the omission of such word from a similar section of the statute shows a different legislative intent. Commonwealth v. Taylor, 424 Pa.Super. 181, 622 A.2d 329 (1993). See Novicki v. O'Mara, 280 Pa. 411, 416, 124 A. 672, 673 (1924); Hodges v. Rodriguez, 435 Pa.Super. 360, 370, 645 A.2d 1340, 1345 (1994) ("a change of language in provisions is prima facie evidence of a change of intent"). Where a legislature includes specific language in one section of a statute and excludes it from another, that language should not be implied where excluded. Bureau of Liquor Control Enforcement v. Prekop, 156 Pa.Cmwlth. 250, 627 A.2d 223 (1993). Furthermore, we may not add provisions which the legislature has omitted unless the phrase is necessary to the construction of the statute. Commonwealth v. Reeb, 406 Pa.Super. 28, 593 A.2d 853 (1991); Commonwealth v. Scott, 376 Pa.Super. 416, 546 A.2d 96 (1988), allocatur denied, 522 Pa. 612, 563 A.2d 497 (1989). See Commonwealth v. Rieck Investment Corporation, 419 Pa. 52, 213 A.2d 277 (1965) (it is not for courts to add to a statute, by interpretation, a requirement which the legislature did not see fit to include); Kusza v. Maximonis, 363 Pa. 479, 70 A.2d 329 (1950) (court cannot supply omissions in a statute by its powers of construction where it appears the omission was intentional). If a phrase is necessary, it may be added *268 but only if the addition does not affect the scope of the statute. Id. See also Commonwealth v. Fisher, 485 Pa. 8, 400 A.2d 1284 (1979). See Garcia v. Community Legal Serv. Corp., 362 Pa.Super. 484, 524 A.2d 980 (1987), allocatur denied, 517 Pa. 623, 538 A.2d 876 (1988) (adding the word "physical" to the term "injury" improperly limited the scope of the statute). The addition may not conflict with the obvious purpose and intent of the statute. Commonwealth v. Scott, supra.
Further, a statute should be interpreted as a whole, Commonwealth v. Lurie, supra; Commonwealth v. Biddle, 411 Pa.Super. 210, 601 A.2d 313 (1991); giving effect to all of its provisions if possible. Commonwealth v. Brown, 423 Pa.Super. 264, 620 A.2d 1213 (1993); Commonwealth v. Grayson, supra. Every word, sentence or provision of a statute is intended for some purpose and accordingly must be given effect. Commonwealth v. Lobiondo, 501 Pa. 599, 462 A.2d 662 (1983). See Commonwealth v. Pierce, 397 Pa.Super. 126, 579 A.2d 963 (1990), allocatur denied, 527 Pa. 609, 590 A.2d 296 (1991) (legislature must be presumed to have intended every word of the statute to have effect); Commonwealth v. Scott, supra (we must construe a statute so as to give effect to every word).
Also, a court is permitted to consider the practical consequences of a particular interpretation. Commonwealth v. Runion, supra; Commonwealth v. Lundberg, supra. We are to presume that the legislature did not intend a result that is absurd or unreasonable. Commonwealth v. Lundberg, supra; Commonwealth v. Fouse, 417 Pa.Super. 534, 612 A.2d 1067 (1992), allocatur denied, 535 Pa. 614, 629 A.2d 1376 (1993). Statutes should receive the most sensible construction possible. Commonwealth v. Coleman, 289 Pa.Super. 221, 433 A.2d 36 (1981).
The intent of the legislature may be determined by considering, among other things,
(1) The occasion and necessity for the statute.
(2) The circumstances under which it was enacted.
(3) The mischief to be remedied.

*269 (4) The object to be attained.
(5) The former law, if any, including other statutes upon the same or similar subjects.
(6) The consequences of a particular interpretation.
(7) The contemporaneous legislative history.
(8) Legislative and administrative interpretations of such statute.
1 Pa.C.S.A. § 1921(c). See also Commonwealth v. Brown, supra; Commonwealth v. Davis, 421 Pa.Super. 454, 618 A.2d 426 (1992); allocatur denied, 535 Pa. 630, 631 A.2d 1004 (1993); Commonwealth v. Barone, 276 Pa.Super. 282, 419 A.2d 457 (1980) (en banc).
Official comments may be consulted in the construction of the original provisions of the statute if the comment was published or generally available prior to the consideration of the statute by the legislature. Commonwealth v. French, 531 Pa. 42, 611 A.2d 175 (1992). See also Commonwealth v. Neckerauer, supra. Statements made by legislators during the enactment process, while not dispositive of legislative intent, may be considered as part of the contemporaneous legislative history. Commonwealth v. Wilson, 529 Pa. 268, 602 A.2d 1290 (1992), cert. denied in Aultman v. Pennsylvania, ___ U.S. ___, 112 S.Ct. 2952, 119 L.Ed.2d 574 (1992).
Finally, a penal statute is a statute which defines criminal offenses and specifies corresponding fines and punishments. Black's Law Dictionary (5th ed. 1981). Penal statutes must be strictly construed. Commonwealth v. Hill, 481 Pa. 37, 391 A.2d 1303 (1978); Commonwealth v. Wood, 432 Pa.Super. 183, 208, 637 A.2d 1335, 1348 (1994). However, strict construction does not require that the intent of legislature be disregarded. Commonwealth v. Runion, supra. Further, language which is capable of more than one meaning can be clear and unmistakable in the context of its usage by the selection of the meaning which is neither forced nor strained. Commonwealth v. Grayson, supra. It is only when a statute has two reasonable constructions, the construction which operates in favor of the defendant's liberty must be applied, not *270 the construction supported by the greatest reason. Commonwealth v. Eyster, 401 Pa.Super. 477, 585 A.2d 1027 (1991), allocatur denied by Commonwealth v. Larsen, 529 Pa. 646, 602 A.2d 857 (1992); Commonwealth v. Smith, 333 Pa.Super. 155, 481 A.2d 1352 (1984).
Instantly, section 17 is a penal statute. Therefore, we must now determine whether, according to the rules of statutory construction, two reasonable constructions for section 17(1)(vi) exist, or whether only one interpretation is a reasonable interpretation.
We first look at the plain meaning of the words of the statute and consider them in their grammatical context. Black's Law Dictionary defines "charged" as "an accusation of crime by complaint, indictment or information." Black's Law Dictionary (5th ed. 1981). When a person is charged with a crime, that person's guilt or innocence as to the accusation has yet to be determined. Once the criminal charge against that person has been disposed of in a judicial proceeding, that person is no longer accused or charged with a crime; rather, that person, in the past, was charged and convicted of a crime or was charged and acquitted of a crime or was charged and the criminal charges were dismissed. In other words, prior to a disposition of the criminal charges, the criminal charges are pending and the person is charged; after a disposition of the criminal charges, the criminal charges are no longer pending and the person was charged with a criminal offense in the past. See e.g. Commonwealth v. Canfield, 432 Pa.Super. 496, 499, 639 A.2d 46, 48 (1994) ("Appellant was charged with [eight offenses] . . . appellant pled nolo contendre to [one offense]."); Commonwealth v. Toro, 432 Pa.Super. 383, 391-92, 638 A.2d 991, 995 (1994) ("Appellant and Mr. Cartagena were thereafter charged [with several drug offenses] . . . and Appellant was convicted of those offenses."). At the time a defendant is being sentenced, the defendant was charged with and convicted of the offense for which he is being sentenced. Therefore, according to the common and approved usuage of "was charged," after a defendant pleads guilty or nolo contendre to a charge of violating 35 P.S. § 780-113(a)(14), (30), or *271 (37) he was charged with violating 35 P.S. § 780-113(a)(14), (30), or (37). Consequently, the defendant would be ineligible to receive probation without verdict pursuant to section 17(1)(vi).
The Commonwealth's interpretation of section 17(1) conforms with the common and approved usage of the term "was charged." The Commonwealth argues that the charges are no longer pending because appellee pled nolo contendere to violating 35 P.S. § 780-113(a)(30) and sought to have a sentence, probation without verdict, imposed. The Commonwealth posits that the charge was resolved through the plea. Thus, the Commonwealth concludes, appellee was charged with violating 35 P.S. § 780-113(a)(30). Therefore, appellee is ineligible to receive probation without verdict.
Appellee, however, argues that because he received probation without verdict, the charges are still pending. He posits that because he will not have a conviction on his record and the charges will be dismissed if he successfully completes his probation without verdict, the charges have not been resolved and therefore, the charges are still pending. Appellee's argument begs the question.
Appellee's argument fails to consider that probation without verdict cannot be imposed until the charges have been resolved. Not until a plea of guilt or nolo contendere has been entered can appellee receive a sentence of probation without verdict. Once appellee has pled nolo contendere, the charges are no longer pending. Hence, appellee is no longer "being charged."
Also, appellee does not consider the consequences of violating his probation without verdict. If appellee violates his probation without verdict, judgment may be entered based upon his nolo contendere plea and the case would proceed as a typical criminal case. See 35 P.S. § 780-117. Appellee is not permitted to enter a new plea or go to trial if he violates his probation without verdict. See id. Judgment could not be entered unless there was a resolution of the charges. Thus, once appellee entered a plea of nolo contendere, the charges *272 were resolved and no longer pending. Therefore, appellee's contention that his charges are still pending such that section 17(1)(vi) does not prohibit him from receiving probation without verdict contravenes the common and approved usage of the phrase "was charged."
We next consider the effect that both of the proposed interpretations of the term "was charged" has on subsection (iii) of section 17(1). Section 17(1)(iii) also contains the term "was charged," which must be given the same meaning given to "was charged" in section 17(1)(vi). See Commonwealth v. Lurie, supra. Section 17(1)(iii), in its entirety, states:
(iii) Any person who has been placed on Accelerated Rehabilitative Disposition where the person was charged with a violation of this act or the commission of a misdemeanor or felony in this Commonwealth.
35 P.S. § 780-117(1)(iii) (emphasis added).
The legislative intent of section 17(1)(iii) is clear on its face. Persons who have been placed on Accelerated Rehabilitative Disposition ("ARD") for violating the Drug Act, 35 P.S. § 780-101 et seq. or for committing a misdemeanor or felony in this Commonwealth are prohibited from receiving probation without verdict.
The interpretation of "was charged" which the Commonwealth urges us to accept, that "was charged" means "was charged in the proceedings in which probation without verdict is being imposed," does not change the clear intent of subsection (iii) of section 17(1). Section 17(1)(iii), according to the Commonwealth's interpretation, would prohibit persons from receiving probation without verdict who previously have been placed on ARD where the person was charged with violating the Drug Act or was charged with committing a misdemeanor or felony in this Commonwealth.
Appellee's interpretation, however, that "was charged" means "was charged in a separate, prior proceeding than the one in which probation without verdict is being imposed" does not conform with the plain meaning of section 17(1)(iii). Subsection (iii) of section 17(1), according to appellee's interpretation, *273 would prohibit persons from receiving probation without verdict who previously have been placed on ARD where the person was charged with violating the Drug Act or committing a felony or misdemeanor in a separate, prior proceeding than the one in which ARD was imposed.
As stated above, the legislative intent of section 17(1)(iii) is that any person who has been placed on ARD for violation of the Drug Act or the commission of a misdemeanor or felony is barred from receiving a sentence of probation without verdict. Appellee's interpretation of the term "was charged" when applied consistently throughout the statute, contradicts the clear intent of section 17(1)(iii) while the Commonwealth's interpretation of "was charged" is consistent with the legislative intent of section 17(1)(iii).
Further, realizing that language included in one provision of the statute and omitted in other similar provisions of the same statute is significant to show different legislative intent, we examine section 17(1) as a whole. Also, the use of different language in similar provisions of the same statute signifies a different legislative intent.
Section 17(1)(i) uses the language "has previously been convicted" to show a prior, separate conviction. The word "previously" is not included in subsection (vi). The omission of the term "previously" in subsection (vi), when it was included in subsection (i), shows that the omission of the word "previously" was intentional. The legislature did not intend for the term "was charged" to mean "was previously charged."
Additionally, subsection (iv) states that a party is ineligible to receive probation without verdict if the person "is charged with or has pled guilty or nolo contendere to multiple offenses which are based on separate conduct or criminal episodes." 35 P.S. § 780-117(1)(iv) (emphasis added). The legislature included language in subsection (iv) which specifically identified separate criminal actions. The legislature did not include language which specifically identified separate criminal action in subsection (vi). Again, the omission of that language or similar language indicating separate, criminal incident in subsection *274 (vi), when it was included in subsection (iv), is significant. Language indicating separate criminal conduct was intentionally omitted from section 17(1)(vi). Thus, the legislature did not intend for section 17(1)(vi) to refer to separate conduct.
The legislature has included specific language in two of the other subsections of section 17(1) which shows that the legislature is referring to a separate proceeding. The legislature has not included similar specific language in subsection (vi) to indicate that subsection (vi) of section 17(1) was intended to mean a prior, separate proceeding. Thus, due to the deliberate omissions, we must conclude that the legislature did not intend subsection (vi) to refer to prior, separate proceedings. If the legislature intended section 17(1)(vi) to refer to separate prior proceedings, it would have included specific language showing that intent as it included such language in subsections (i) and (iv).
Furthermore, it is undisputed that subsections (i), (ii), and (iii) of section 17(1) use the phrase "has been" to connote prior, separate occurrences. In subsection (vi), however, instead of using the phrase "has been," the legislature uses "was." The choice of the different verb tense shows a different legislative meaning. If the legislature had intended section 17(1)(vi) to mean previous, separate charges, the legislature would have used the same language it used in subsections (i), (ii) and (iii) of section 17(1) to refer to previous, separate proceedings. The legislature's use of the term "was charged" instead of "has been charged" shows that the legislature did not intend to refer to separate, previous charges, but rather the legislature intended to refer to the proceeding in which the defendant seeks a sentence of probation without verdict.
Appellee concedes that when different language is used in parallel provisions of a statute, the provisions are intended to mean different things. Appellee recognizes that subsections (i), (ii), and (iii) of Section 17(1), all of which use the language "has been," refer to historical events, i.e., previous incidents. Appellee also recognizes that section 17(1)(vi) uses the term "was." Appellee then posits that all ineligibility conditions *275 which use a past tense refer to prior, separate criminal behavior. Appellee, therefore, concludes that the language "was" and the language "has been" refer to previous incidents.
There is an internal conflict in appellee's reasoning. After recognizing the rule that different language has different meaning and conceding that different language exists in the different provisions of section 17(1), appellee concludes that the different language in the different provisions has the same meaning. Appellee's interpretation is in direct contravention of the rules of statutory construction. See Novicki v. O'Mara, supra; Hodges v. Rodriguez, supra.
The Commonwealth's argument supporting its interpretation does not have such a conflict. The Commonwealth's interpretation allows the different language to have different meaning and gives the entire statute a sensible meaning. The language, as interpreted by the Commonwealth, can be applied consistently throughout the statute without an absurd or unreasonable result.
Because of the use of different language in the provisions of section 17(1), we would have to add the intentionally omitted word "previously" to subsection (vi) in order for subsection (vi) to render only a person who was previously charged with violating 35 P.S. § 780-113(a)(14), (30), or (37) ineligible to receive probation without verdict. Adding this language so that subsection (vi) of section 17(1) refers to previous, separate proceedings affects the scope of the statute. Instead of barring from probation without verdict persons who have been charged with violating 35 P.S. § 780-113(a)(14), (30), or (37) in the proceeding in which the person wishes to receive probation without verdict, the excluded person would be someone who has been charged before with violating 35 P.S. § 780-113(a)(14), (30), or (37) and is being charged with violating the Drug Act a second time. Shifting the class of people who are barred from receiving verdict without probation affects the scope of the statute. Further, the language we must insert has been deliberately omitted from section 17(1)(vi). Thus, it is improper to insert the word "previously" into subsection (vi) of section 17(1). We must read section 17(1)(vi) as it is *276 written, giving the language its common and approved meaning; "Any person who was charged with violating clause (14), (30), or (37) of subsection a of [35 P.S. § 780-113]" is ineligible to receive probation without verdict. 35 P.S. § 780-117(1)(vi).
In addition, we must interpret the statute so as to give full effect to each provision. No provision is meant as surplusage. Commonwealth v. Pierce, supra. Section 17(1)(i) already renders those persons who have been previously charged and convicted under 35 P.S. § 780-113(a)(14), (30), or (37) ineligible to receive probation without verdict. Subsection (iii) of section 17(1) excludes persons from receiving probation without verdict who have been placed on ARD after having been charged with violating the relevant offenses. Section 17(i)(iv) bars those persons who, as a result of separate incidents, have charges pending for or have pled guilty or nolo contendere to violating 35 P.S. § 780-113(a)(14), (30), or (37) from being put on probation without verdict. Section 17(1)(v) prohibits juveniles who were adjudicated delinquent for violating 35 P.S. § 780-113(a)(14), (30), or (37) from receiving probation without verdict. Thus, under appellee's interpretation, the only person to whom section 17(1)(vi) would apply is someone who has been previously charged with violating 35 P.S. § 780-113(a)(14), (30), or (37) but has been acquitted or has had the charges dismissed, discharged or withdrawn.
Section 17(1)(vi), as interpreted by appellee, prohibits a person who was previously charged and acquitted of violating 35 P.S. § 780-113(a)(14), (30), or (37) from receiving a second chance and yet gives the admitted drug dealer a second chance. Under appellee's interpretation, that persons who have been charged and acquitted or have been charged and have had the charges dropped are ineligible for probation without verdict while admitted drug dealers are eligible to receive probation without verdict. This interpretation of section 17(1)(vi) is absurd and unreasonable.
The Commonwealth's construction does not render such an unreasonable effect. Rather, construing subsection (vi) of section 17(1) to mean the charges for which defendants are presently being sentenced after pleading guilty or nolo contendere *277 allows each provision of section 17(1) to have a reasonable meaning and effect. The Commonwealth's interpretation does not allow admitted drug dealers a second chance when people whose prior drug charges have been favorably disposed are not given that same second chance.
Finally, we consider the previous law, the necessity of the present statute, the mischief to be remedied and the contemporaneous legislative history. Before it was amended in 1992, section 17(1), as amended in 1972, stated:
A person who has not previously been convicted of an offense under this act or under a similar act of the United States, or any other state, is eligible for probation without verdict if he pleads nolo contendere or guilty to, or is found guilty of, any nonviolent offense under this act. The court may, without entering a judgment, and with the consent of such person, defer further proceedings and place him on probation for a specific time period not to exceed the maximum for the offense upon such reasonable terms and conditions as it may require.
Probation without verdict shall not be available to any person who is charged with violating clause (30) of subsection (a) of section 13 of this act and who is not himself a drug abuser and who does not prove the fact of such drug abuse to the satisfaction of the court.
35 P.S. § 780-117(1).
The statute originally permitted persons who were charged with violating 35 P.S. § 780-113(a)(30) and who were drug dependent to receive probation without verdict. In 1992, the statute was amended and the legislature added several exclusions to those eligible to receive probation without verdict. It is clear on the face of the present statute that the legislature meant to further limit those persons who qualified for probation without verdict by enacting the present statute. The legislature, by enacting the present statute, has made it more difficult to qualify for probation without verdict.
By limiting who is eligible to receive probation without verdict, the legislature has limited, to an extent, the discretion *278 of the trial court to impose probation without verdict. The multiple exclusions insure that a person, whom the legislature considers undeserving of probation without verdict, does not receive probation without verdict.
The legislature considers drug dealing a serious crime. See 18 Pa.C.S.A. § 7508. Any person who is convicted of violating 35 P.S. § 780-113(a)(14), (30), or (37) when the aggregate weight of the cocaine is at least two grams is subject to a mandatory minimum term of imprisonment. See 18 Pa.C.S.A. § 7508; Commonwealth v. Biddle, supra. Even if it is a person's first offense and the person is certified drug dependent, the convicted drug dealer is subject to the mandatory minimum sentence of imprisonment. See 18 Pa.C.S.A. § 7508; Commonwealth v. Biddle, supra.
Considering that the legislature imposes a mandatory minimum sentence of imprisonment on a person convicted for the first time of violating 35 P.S. § 780-113(a)(14), (30), or (37) when the amount of cocaine involved is at least two grams, it is illogical that the legislature would allow a person who admits to violating 35 P.S. § 780-113(a)(14), (30), or (37) where less than two grams of cocaine are involved, to be eligible for probation without verdict. Allowing a person to be eligible for probation without verdict, thereby giving the person a clean record if he successfully completes his probation term, when a similarly situated person, who only differs by having two grams or more of cocaine, is not eligible for regular probation but must serve a mandatory minimum prison term, supports the interpretation that the legislature did not intend an admitted drug dealer to be eligible for probation without verdict. Because the legislature has added restrictions to who is eligible to receive probation without verdict and the legislature imposes a mandatory minimum term of imprisonment on a defendant who pleads guilty to violating 35 P.S. § 780-113(a)(14), (30), or (37) when the amount of cocaine involved is two grams or more, we must conclude that the legislature did not intend a person who pleads guilty to violating 35 P.S. *279 § 780-113(1)(14), (30), or (37), when less than two grams are involved, to be eligible for probation without verdict.[3]
We also consider the statements made by Representative Dennis O'Brien at the time of the vote to pass the present section 17(1). Representative O'Brien first states that "[Section 17] is a valuable tool to end the clear abuse of section 17 dispositions." Statement of Representative O'Brien, 1992 Pa. Legislative Journal  House p. 135. During his statement, Representative O'Brien lists people who would be ineligible for probation without verdict, concluding with the remark "[Section 17(1)] also excludes serious juvenile offenders and drug offenders and drug dealers." Statement of Representative O'Brien, 1992 Pa. Legislative Journal  House, pp. 135-36 (emphasis added).
The Commonwealth contends that the statement refers to subsection (v) and subsection (vi) of section 17(1). Appellee argues that the statement refers only to subsection (v) of section 17(1). While Representative O'Brien's statement is not dispositive of the legislative intent, it is proper to consider his statement to aid us in our determination of the legislative intent. See Commonwealth v. Wilson, supra at 275 n. 4, 602 A.2d at 1294 n. 4.
The consequences of appellee's averment that Representative O'Brien's statement only referred to section 17(1)(v) is that juvenile drug dealers are denied probation without verdict. *280 Considering appellee's contention that Representative O'Brien's statement refers only to section 17(1)(v) in conjunction with appellee's interpretation of section 17(1)(vi), that an admitted drug dealer is allowed probation without verdict if it is his first offense, the result we reach is that juvenile drug dealers may not have a second chance in order to "go straight" but adult drug dealers are given that second chance. This contention is illogical. Appellee's use of Representative O'Brien's statement to support his interpretation makes the effect of the statute even more absurd and unreasonable.
The Commonwealth's contention that the statement refers to both subsection (v) and (vi) is more reasonable. Drug dealers, whether juvenile or adult, may not be sentenced to probation without verdict.[4]
An argument has been made that the purpose of the statute is to give first time violators of the Drug Act, including admitted drug dealers, a second chance. Only recidivists are *281 to be denied probation without verdict. This argument would be persuasive if it were not for the fact that if subsection (vi) is not meant to exclude admitted drug dealers then it must be interpreted to exclude persons who have been acquitted of violating 35 P.S. § 780-113(a)(14), (30), or (37) or those persons who had the charges dropped. People falling within this category are, by definition, not repeat offenders. Thus, prohibiting this type of first time offender from receiving probation without verdict contradicts appellee's proposed purpose of the statute, to give first time offenders a second chance.
After applying the rules of statutory construction to the statute, the meaning of the statute is clear. A defendant may not receive, as a sentence in the proceeding in which he pled guilty or nolo contendere to violating 35 P.S. § 780-113(a)(14), (30), or (37), probation without verdict.
Our analysis of section 17(1)(vi) does not suggest that both of the constructions proposed are reasonable. On the contrary, applying of the rules of statutory construction to section 17(1)(vi) indicates that only one reasonable construction of the statute exists that a first time offender who pleads guilty or nolo contendere to violating 35 P.S. § 780-113(a)(14), (30), or (37) cannot receive probation without verdict.
The fact that section 17 is a penal statute does not require us to accept and utilize an unreasonable interpretation. If there is only one reasonable interpretation of a penal statute, that meaning must be utilized.
Numerous cases use the rules of statutory construction to interpret penal statutes. See e.g. Commonwealth v. Runion, supra; Commonwealth v. Neckerauer, supra; Commonwealth v. Lurie, supra; Commonwealth v. Reeb, supra; Commonwealth v. Pierce, supra. If the rules of statutory construction are used to interpret a statute, there must appear to be an ambiguity. See Commonwealth v. Dickerson, supra. However, the courts, after applying the rules of statutory construction, have held that the meaning of the statute which they are interpreting is clear. See e.g. Commonwealth v. Lundberg, supra; Commonwealth v. Scott, supra. In these cases, once *282 the court has determined that the meaning of the statute is clear, it has adopted that interpretation. See id. Not all of the cases have adopted the interpretation most favorable to the defendant. See e.g. Commonwealth v. Taylor, supra (temporal restrictions are not suggested in 18 Pa.C.S.A. § 5704(2)(ii) as appellant contends); Commonwealth v. Grayson, supra (appellant's narrow definition of touch as used in 18 Pa.C.S.A. § 3101 not accepted). Rather, the courts have adopted the reasonable interpretation. See e.g. id.
Considering the term "was charged" in the context of its usage, the meaning of "was charged" and the intent of the legislature is clear. Accordingly, only the reasonable interpretation of section 17(1)(vi) may be applied. Therefore, a defendant who pled guilty or nolo contendere to violating 35 P.S. § 780-113(a)(14), (30), or (37) cannot be sentenced to probation without verdict.
Next, we consider the argument that section 17(1)(vi) is void for vagueness that was raised sua sponte by the dissent. We recognize that we may affirm a sentencing court on any basis. See Commonwealth v. Harner, 533 Pa. 14, 617 A.2d 702 (1992). If we declare section 17(1)(vi) unconstitutional we would, in essence, be affirming the trial court's judgment of sentence.
However, we have a well-settled legal rule that an appellate court may not raise a constitutional issue sua sponte. Commonwealth v. Barone, supra. An appellate court should not address constitutional issues unnecessarily or when they are not properly presented and preserved in the trial court for our appellate review. Id. 276 Pa.Super. at 286, 419 A.2d at 460. "The Pennsylvania Supreme Court has clearly held that constitutional issues, even sentencing issues based on the constitution, are waived if not properly raised in the trial court." Commonwealth v. Wallace, 368 Pa.Super. 255, 261, 533 A.2d 1051, 1054 (1987) (quoting Commonwealth v. Hartz, 367 Pa.Super. 267, 273, 532 A.2d 1139, 1142 (1987) (Cirillo, P.J. concurring)). Constitutional issues, even if they go to the legality of the sentence, can be waived. Id.
*283 Instantly, appellee did not challenge the constitutionality of Section 17(1)(vi) at sentencing. Although appellee has raised other constitutional challenges, in his appellate brief, he has not claimed that Section 17(1)(vi) is unconstitutionally vague. Thus, appellee has waived the argument that subsection (vi) of Section 17(1) is void for vagueness.
Our research reveals no cases in which an appellate court affirms a trial court on a ground that a party has waived. Because appellee has waived the argument that subsection (vi) of Section 17(1) is void for vagueness and there is a strict prohibition against raising a constitutional issue sua sponte, it is not proper to address the issue that Section 17(1)(vi) is void for vagueness.
Appellee, however, raises two other constitutional issues. Appellant first alleges that subsection (vi) of section 17(1) violates due process, because whether a defendant is eligible for probation without verdict depends on what offense the district attorney charges him. Appellee posits that the district attorney can "`charge' anybody with anything. No matter how slender (or non-existent) the evidence, or unreasonable the inference, the District Attorney can `charge' a person possessing drugs with dealing in drugs (i.e. `possession with intent to deliver')." Appellee's Brief at 22.
"It is unprofessional conduct for a prosecutor to institute, or cause to be instituted, or to permit the continued pendency of criminal charges when it is known that the charges are not supported by probable cause." Commonwealth v. Hawkins, 322 Pa.Super. 199, 206 n. 7, 469 A.2d 252, 255 n. 7 (1983); ABA Standards Relating to the Administration of Criminal Justice 3-3.9(a). A prosecutor is required to refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause. Commonwealth v. Hawkins, supra.
Appellee is claiming that the district attorney routinely acts unprofessionally by charging people with crimes without probable cause. However, other than making the bald statement that the district attorney charges people even *284 though there is slim or non-existent evidence for probable cause, appellee makes no specific allegations and provides no examples of such actions. Without more, we will not hold that the district attorney routinely and purposely violates the standards of conduct for criminal justice administration.
Further, what charge to file is within the discretion of the prosecution. United States v. Batchelder, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979); Commonwealth v. Spells, 417 Pa.Super. 233, 612 A.2d 458 (1992), appeal granted, 535 Pa. 633, 631 A.2d 1006 (1993). Selectivity in the enforcement of criminal law is, of course, subject to constitutional constraints. United States v. Batchelder, supra; Commonwealth v. Agnew, 411 Pa.Super. 63, 600 A.2d 1265 (1991). Selective enforcement may not be based on unjustifiable standards such as race, religion, sex or other arbitrary classification. United States v. Batchelder, supra; Commonwealth v. Agnew, supra. But, a prosecutor may be influenced by the penalties available upon conviction; however, that fact standing alone, does not give rise to a violation of the Equal Protection or Due Process Clauses. United States v. Batchelder, supra; Commonwealth v. Agnew, supra.
In United States v. Batchelder, supra, two provisions of the Omnibus Crime Control and Safe Streets Act of 1968 (Omnibus Act), 18 U.S.C. § 922(h) and § 924(a), had identical substantive elements as applied to the defendant. However, the two provisions had different maximum penalties. The prosecution decided to proceed under § 922(h) of 18 U.S.C., the provision with the greater maximum penalty. The defendant received a sentence of up to five years, the maximum possible sentence. In deciding the defendant's challenge to the constitutionality of the prosecutor's decision of which provision to proceed under, the United States Supreme Court held,
[A] decision to proceed under § 922(h) does not empower the Government to predetermine ultimate criminal sanctions. Rather, it merely enables the sentencing judge to impose a longer prison sentence. . . . More importantly, there is no appreciable difference between the discretion a prosecutor exercises when deciding whether to charge under *285 one of two statutes with different elements and the discretion he exercises when choosing one of two statutes with identical elements. In the former situation, once he determines that the proof will support conviction under either statute, his decision is indistinguishable from the one he faces in the latter context. The prosecutor may be influenced by the penalties available upon conviction, but this fact, standing alone, does not give rise to a violation of the Equal Protection or Due Process Clause. Cf. Rosenberg v. United States, supra, 346 U.S. [273], at 294, 73 S.Ct. [1152], at 1163 [97 L.Ed. 1607 (1953)] (Clark, J., concurring); Oyler v. Boles, supra, 368 U.S. [448], at 456, 82 S.Ct. [501], at 505 [7 L.Ed.2d 446 (1962)]. Just as a defendant has no constitutional right to elect which of two applicable federal statutes shall be the basis of his indictment and prosecution neither is he entitled to choose the penalty scheme under which he will be sentenced. See U.S. Const., Art. II, §§ 2, 3; 28 U.S.C. §§ 515, 516; United States v. Nixon, supra, 418 U.S. [683], at 695, 94 S.Ct. [3090], at 3100 [41 L.Ed.2d 1039 (1974)]
Id. at 125, 99 S.Ct. at 2205, 60 L.Ed.2d at 765-66.
Presently, appellee is not alleging that people are charged with violating 35 P.S. § 780-113(a)(14), (30) or (37) based on unjustifiable standards. Appellee is not contending he was charged with violating 35 P.S. § 780-113(a)(30) based on an unjustifiable standard. Appellee does not aver that the charge of violating 35 P.S. § 780-113(a)(30) against him was not based on probable cause. Appellee is merely complaining that because he is charged with and pled nolo contendere to violating section 780-113(a)(30) of 35 Pa.C.S.A., he will receive a stiffer penalty than he would have received had he not been charged with and pled nolo contendere to that particular drug offense. Consequently, appellee has failed to show that the district attorney has acted unconstitutionally. Thus, appellee has not shown that section 17(1), which recognizes the district attorney's discretion in charging offenders, violates the Equal Protection or Due Process Clauses.
*286 The second constitutional challenge appellee raises is that section 17(1)(vi) violates the separation of powers doctrine. Appellee contends that the ineligibility condition of section 17(1)(vi) pre-empts a core judicial function, determining sentences of a convicted defendant.
We agree that it is the judiciary and not the district attorney who has the right to impose sentences upon conviction. Commonwealth v. Amundsen, 416 Pa.Super. 464, 611 A.2d 309 (1992). However, the legislature establishes the criminal sanctions to be imposed when a defendant violates a criminal statute of Pennsylvania. Id. Violations of different criminal statutes results in the imposition of different criminal sanctions. See generally 18 Pa.C.S.A. § 101 et seq. It is the legislature's duty to inform the prosecutors and the courts as to the permissible punishment alternatives for a particular offense. Commonwealth v. Amundsen, supra. We reiterate that the district attorney, as part of the executive branch of government, has the primary function of enforcing the laws of this Commonwealth. Id. A prosecutor is vested with the considerable discretion of what charges should be brought against a particular offender. Id. Again, it is not impermissible for the district attorney to consider the penalties associated with a particular offense when the district attorney decides which offenses to charge a person. United States v. Batchelder, supra; Commonwealth v. Agnew, supra. After the defendant is convicted or pleads guilty or nolo contendere, the judiciary determines which punishment, outlined by the legislature, is most suitable for the particular offender.
Instantly, the legislature has set out the possible criminal sanctions for violating the Drug Act. The legislature has decided that probation without verdict is available for first time offenders who have not violated 35 P.S. § 780-113(a)(14), (30), or (37). Appellee concedes that the legislature can limit the availability of probation without verdict to those people who have not violated 35 P.S. § 780-113(a)(14), (30), or (37).
The district attorney has performed her function by charging appellee with an offense, violation of 35 P.S. § 780-113(a)(30). *287 By charging appellee with that offense, the district attorney is not imposing sentence, it is merely defining what criminal sanctions are available for the trial court to impose once a defendant pleads guilty or nolo contendere. Thus, section 17(1)(vi) which removes the possible criminal sanction of probation without verdict from the possible sanctions to be imposed by the trial court does not grant the district attorney sentencing functions. The statute limits the trial court's possible criminal sanctions. This limitation is not violative of the separation of powers doctrine. See Commonwealth v. Amundsen, supra.
Based on the foregoing, we hold the constitutional challenges are meritless. Section 17(1)(vi) is constitutional and, hence, must be applied to the instant case.
Using the rules of statutory construction the meaning of section 17(1)(vi) is clear. There is only one reasonable interpretation of the statute. Subsection (vi) of section 17(1) prohibits a first time offender who has pleaded nolo contendere or guilty to violating 35 P.S. § 780-113(a)(14), (30), or (37) from receiving probation without verdict. Thus, the trial court imposed an illegal sentence upon appellee when it sentenced appellee to probation without verdict after he pled nolo contendere to violating 35 P.S. § 780-113(a)(30). We vacate appellee's judgment of sentence and remand for resentencing consistent with this opinion.[5]
Sentence vacated. Remand for resentencing.
CIRILLO, J., filed a dissenting opinion.
BECK, J., joined the opinion by KELLY, J. and filed a concurring statement.
TAMILIA, J., filed an opinion in support of remand.
*288 McEWEN, J., joined the opinion in support of remand by TAMILIA, J.
CAVANAUGH, WIEAND, BECK, POPOVICH and SAYLOR, JJ., joined the opinion by KELLY, J.
CIRILLO, Judge, dissenting:
I respectfully dissent. While I agree that the majority's interpretation of the phrase "was charged" is one logical construction of 35 P.S. § 780-117(1)(vi) (hereinafter the "Probation Statute"), I believe that the phrase also imports the countervailing view that the legislature intended to provide drug dependent individuals, never before charged with drug dealing, with the opportunity to receive probation without verdict. Because I am unable to reconcile these diametric interpretations, I would strike down the Probation Statute as unconstitutionally vague.
In August of 1992, the legislature amended the Probation Statute in an effort to help rehabilitate first-time drug users.[1] To this end, the General Assembly set forth a statutory scheme in which first-time drug users have the opportunity to receive probation without verdict in lieu of a possible criminal conviction. Once such probation is authorized, the offender is free to embark on a course of rehabilitative treatment without the stigma of a criminal record. The Probation Statute, however, expressly exempts from eligibility six categories of offenders. The Probation Statute provides that:
(1) The following persons shall be ineligible for probation without verdict:
(i) Any person who has previously been convicted of an offense under this act or similar act of the United States or any other state.

*289 (ii) Any person who has been convicted of a misdemeanor or felony in this Commonwealth or an equivalent crime under the laws of any other state.
(iii) Any person who has been placed on Accelerated Rehabilitative Disposition where the person was charged with a violation of this act or the commission of a misdemeanor or felony in this Commonwealth.
(iv) Any person who is charged with or has pleaded guilty or nolo contendere to multiple offenses which are based on separate conduct or arise from separate criminal episodes such that those offenses could be tried separately in accordance with 18 Pa.C.S. § 110 (relating to when prosecution barred by former prosecution for different offense).
(v) Any person who is a dangerous juvenile offender under 42 Pa.C.S. § 6302 (relating to definitions) or who was adjudicated delinquent for conduct which would constitute a violation of clause (30) or (37) of subsection
(a) of section 13 of this act.
(vi) Any person who was charged with violating clause (14), (30) or (37) of subsection (a) of section 13 of this act.[2]
35 P.S. § 780-117 (emphasis added).
In the case at hand, it is our narrow task to determine the precise meaning of the phrase "was charged" as it appears in subsection six of the Probation Statute. The majority contends that the phrase "was charged" clearly and unambiguously refers to a defendant "currently" charged with violating 35 P.S. § 780-113(14), (30), or (37) and steadfastly rejects the alternative reading that would exempt a defendant "currently" charged, only if he or she was previously charged in an earlier action. Although the majority's view is steeped in logic, I *290 believe that the Probation Statute's alternative reading is more compelling. In any event, because both constructions of subsection six of the Probation Statute are viable, I would strike the provision as unconstitutionally vague.
The majority interprets the phrase "was charged" to mean the "current" charges for which the defendant is being sentenced. In so ruling, the majority relies both on the principles of statutory construction and on its characterization of the legislative intent behind the Probation Statute.
The majority's chief statutory construction argument is rooted in the axiom that, whenever possible, we must interpret a statute according to the plain meaning of its language. 1 Pa.C.S.A. § 1903;[3]Commonwealth v. Bell, 512 Pa. 334, 339, 516 A.2d 1172, 1175 (1986). In other words, if the language of a statute is clear and free from ambiguity, we are required to interpret the statute according to the common and accepted usage of the terms provided by the legislature. Bell, 512 Pa. at 340, 516 A.2d at 1175.
Applying this rule to the Probation Statute, the majority concludes that the phrase "was charged" imports a clear and unambiguous meaning. To the majority, the phrase "was charged" includes, by definition, the charges to which a defendant pled guilty or nolo contendere in the current proceeding. This is so, the majority continues, because a defendant "is charged" with a crime only "before" a case has been disposed of and by necessity, a defendant "was charged" with a crime only "after" he or she is convicted, is acquitted, or pleads guilty or nolo contendere. Accordingly, as Berryman "was charged" with violating 35 Pa.C.S.A. § 780-113(30) and pled nolo contendere to that charge, the majority concludes that he was ineligible to receive probation without verdict.
Additionally, the majority relies upon the legislature's inconsistent use of verbiage and verb tense to support its interpretation. Particularly, the majority looks to the general rule that when the legislature changes either the language or the *291 verb tenses employed within a particular provision, we presume that it knew the meaning and significance of the language it used. Dickerson v. New Banner Institute, Inc., 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983); see also Novicki v. O'Mara, 280 Pa. 411, 416, 124 A. 672, 673 (1924) ("A change of language in separate provisions of a statute is prima facie evidence of a change of intent.").
Utilizing this general rule, the majority avers that the phrases "has been" and "has previously been" in subsections (i), (ii), and (iii) are used by the legislature to connote separate, prior occurrences. Extrapolating forward, the majority argues that had the legislature intended "was charged" to mean separate, prior charges, it would have employed a consistent scheme and, necessarily, would have used the words "has been charged." Accordingly, the majority concludes that the different choice of words shows the legislature's intent to exclude those currently charged with violations of 35 P.S. § 780-113(14), (30), or (37) from receiving probation without verdict.
In its final argument, the majority claims that only its interpretation of the Probation Statute keeps with the intent of the legislature. In so holding, the majority relies on the tenet that where the language of a statute is ambiguous, we are instructed to ascertain and effectuate the intent of the legislature, to, if at all possible, give effect to all of a statute's provisions, and to presume the General Assembly did not intend a result which is either absurd, impossible to execute, or unreasonable. 1 Pa.C.S.A. § 1921(a); 1 Pa.C.S.A. § 1922(b).
The majority asserts that an interpretation which defines the phrase "was charged" to mean "charged in an earlier proceeding" would produce the absurd and unreasonable result of "punishing the innocent" and "rewarding the guilty." This is the case, the majority states, because, applying the principle that we must give effect to all of a statute's provisions, the only way a defendant charged with violating 35 P.S. § 780-113(14), (30), or (37) could receive probation without *292 verdict is to have been charged and acquitted in an earlier action.[4]
Thus, the majority concludes that considering both the principles of statutory construction and its determination of legislative intent, the only logical interpretation is that the Probation Statute exempts defendants, currently charged with the relevant offenses, from receiving probation without verdict. In my view, if one accepts the majority's inferences as to the intent of the legislature and considers solely the majority's statutory construction analysis, then the construction the majority sets forth is a reasonable one. I am not convinced, however, that the legislature intended the result announced by the majority, and I believe this interpretation is borne out by an equally compelling statutory construction analysis. As such, I conclude that the Probation Statute should be interpreted to enable one currently charged with the relevant offenses to receive probation without verdict, unless he or she had been previously charged with the enumerated offenses.
In reaching my disparate interpretation of the Probation Statute, I rely on the principles of statutory construction, the intent of the General Assembly, and on the inveterate principle that when a criminal statute is ambiguously drafted, the ambiguity should be resolved in favor of the accused.
While I agree with the majority that the change in verb tenses and construction throughout the Probation Statute is indicative of a change of legislative intent, I believe that this change is illustrative of the view that the phrase "was charged" cannot be used interchangeably with the phrase "currently charged." Examining the words used in the Probation Statute in their grammatical context, it is clear that the General Assembly chose to employ a variety of tenses in describing the relationship of a defendant to the legal system.
*293 Sections (i), (ii), and (iii) all use the present-perfect tense and describe a defendant who "has been" or "has previously been" convicted or placed on accelerated rehabilitative disposition (hereinafter "ARD"). All three clearly refer to prior adjudications. Section (v) employs both the present and past tenses and depicts a defendant either "who is a dangerous juvenile offender," "or was adjudicated delinquent." Most revealingly, however, section (iv) uses both the present tense to describe someone "who is charged with . . . multiple offenses" and the past tense to describe someone "has pleaded guilty or nolo contendere to multiple offenses." (Emphases added).
In codifying this scheme, the General Assembly used the present, past, and present-perfect tenses to describe under what circumstances a defendant will be ineligible for probation without verdict. Because we are to assume that the legislature knew the significance and the meaning of the language it employed, Dickerson, supra, and because we presume that the legislative intent changes with a change in verb tense, Novicki, supra, I believe that the plainest meaning of the phrase "was charged" is that, a defendant who "was charged" in a prior proceeding with violating 35 P.S. § 780-113(14), (30), or (37), is ineligible for probation without verdict. If the General Assembly had intended otherwise, it would have employed the same language it had in section (i) or (iv); that is, either "has been charged" or "is charged."
Turning next to the intent of the General Assembly, I believe that the legislature intended drug users, charged with a first offense of possession with intent to deliver a controlled substance, to receive probation without verdict. In discerning legislative intent, we are instructed to consider such factors as the circumstances under which the statute was enacted, the object to be attained, the former law if any, the contemporaneous legislative history, and the consequences of a perceived interpretation. 1 Pa.C.S. § 1921(c).[5]
*294 The Probation Statute as currently codified, replaced the first paragraph of the 1972 version of section 17 (hereinafter the "Original Probation Statute"). The Original Probation Statute provided that:
A person may be entitled to probation without verdict under the following circumstances:
(1) A person who has not previously been convicted of an offense under this act or a similar act of the United States or any other state, is eligible for probation without verdict if he pleads nolo contendere or guilty to, or is found guilty of, any nonviolent offense under this act.
Probation without verdict shall not be available to any person who is charged with violating clause (30) of subsection (a) of section 13 of this act and who is not himself a drug abuser and who does not prove the fact of such drug abuse to the satisfaction of the court.

35 P.S. § 780-117 (1972) (emphasis added).
The unambiguous meaning of the Original Probation Statute was, therefore, that a drug abuser charged under clause (30) of section 13 with possession with the intent to deliver was eligible for probation without verdict.
When the amended version of section 17 was adopted, Representative O'Brian, the sponsor of the Probation Statute, described the legislative intent behind the section as "a valuable tool to end the clear abuse of section 17 dispositions and would help put an end to the frustration of the plain legislative purpose; that is, to help rehabilitate first-time drug users." *295 1992 Pa.Legis.Journal  House (January 29, 1992). Representative O'Brian also said that the amendment was designed to exclude persons with prior convictions under the Drug Act from probation without verdict and that "section 17 should not be available for repeat drug offenders." Additionally, Representative O'Brian went through each of the first five exclusions from section 17, iterating the reasons for the exclusion; the legislator, however, made no mention of the sixth exclusion, the one at issue here. The amendments to section 17 passed the state House 196 to 0.
Thus, when looking at the former law and at the statements on the floor of the House at the time the bill was passed, it would appear that the legislature intended to create a statutory scheme which allows those caught in the web of drug dependency a single opportunity to extricate themselves without the lifelong stigma of a conviction. Furthermore, I believe that this overarching goal of rehabilitation was designed to extend to drug dependent individuals who are currently charged with a drug dealing offense. In this manner, the legislature could relieve these individuals of the burdens concomitant with criminal convictions and sentences, and not condemn them to the fate of Sisyphus[6] without giving them at least one opportunity to recover from their addictions.
In response to this telling argument, the majority seeks refuge behind a clever, yet misleading expression; that is, that under this view, the legislature would produce the absurd result of "punishing the innocent" and "rewarding the guilty." Despite the convincing sound of this argument, upon close scrutiny it does not ring true. Under the majority's view, every drug dependent person, charged with a drug dealing offense, is necessarily punished, and no person so charged is able to receive the care and rehabilitation he or she so desperately needs. This interpretation runs counter to the express intent of the General Assembly; that is, to help rehabilitate first time drug users, not to sentence them to *296 automatic terms in prison. To hold otherwise would create the sort of section 17 disposition the Probation Statute was enacted to prevent.
I believe, therefore, that the better and more likely interpretation of the intent of the legislature in enacting the Probation Statute, is that "true" first-time drug abusers should be given their shot at rehabilitation. To this end, the General Assembly requires that this actually be the accused's first drug dealing offense. If the defendant was previously convicted[7] or placed in ARD,[8] he or she is not able to receive probation without verdict. If the defendant deals drugs, but is not dependent upon them, he or she is also ineligible for probation without verdict.[9] Likewise, if the accused has been arrested and charged with the dealing of controlled substances on a previous occasion, he or she is unable to receive probation without verdict.
Lastly, I believe that the fundamental principle that any ambiguities in criminal statutes are to be resolved in the accused's favor, militates in favor of this construction of the Probation Statute. It is axiomatic that:
When a criminal statute is susceptible of two constructions, both reasonable, it is not the construction that is supported by the greater reason that is to prevail but the one that operates in favor of the defendant's liberty, and if there is doubt, the defendant must be given the benefit of the doubt.
Commonwealth v. Eyster, 401 Pa.Super. 477, 488, 585 A.2d 1027, 1033 (1991); see Commonwealth v. Jones, 432 Pa.Super. 97, 637 A.2d 1001 (1994); Commonwealth v. Smith, 333 Pa.Super. 155, 481 A.2d 1352 (1984); see also Scarborough v. United *297 States, 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977) (holding that the ambit of criminal statutes should be resolved in favor of lenity). Applying this basic precept to the Probation Statute, it is clear that we are required to resolve the ambiguity implicit in the phrase "was charged" in the defendants' favor. This is so, moreover, even if one were to find the majority's interpretation more likely.
With these two diametric interpretations of the Probation Statute in mind, I turn my attention to the practical consequence of such varied delineations. Although I believe that my construction is the more logical, I am nonetheless constrained to recognize the potential validity of the majority's position. In my view, neither interpretation strains the ordinary meaning of the language used, nor represents an unsupported legislative intent. In such cases, I submit, the statutory scheme or provision at issue must be examined under the constitutional microscope of the void-for-vagueness doctrine.[10]
Fundamental to our system of governance is the sacrosanct principle of due process of law, embodied in the Fifth and Fourteenth Amendments to the Constitution of the United States.[11] Although by no means a new concept,[12] the inclusion of a due process requirement within our constitution sends the inescapable message that the fundamental rights of life, liberty, and property are extended to all citizens of this nation. Due process affords all citizens the right to freedom from governmental and societal intrusions without the right to be *298 heard before an unbiased tribunal. The touchstone of due process is the protection of the individual from the arbitrary workings of the government. Wolff v. McDonnell, 418 U.S. 539, 558, 94 S.Ct. 2963, 2975-76, 41 L.Ed.2d 935 (1974).
Springing from these basic tenets comes the enduring constitutional principle of the void-for-vagueness doctrine. Under this doctrine, "an enactment is void-for-vagueness if its prohibitions are not clearly defined." Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). See also Posters `N' Things, Ltd. v. United States, ___ U.S. ___, 114 S.Ct. 1747, 128 L.Ed.2d 539 (1994); Hoffman Estates v. Flipside, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); Commonwealth v. Parker White Metal Co., 512 Pa. 74, 515 A.2d 1358 (1986); Commonwealth v. Heinbaugh, 467 Pa. 1, 354 A.2d 244 (1976); Commonwealth v. Leib, 403 Pa.Super. 223, 588 A.2d 922 (1991). Absent such standards, a statute is unconstitutionally vague.
Traditionally, the void-for-vagueness doctrine is applied to combat three distinct statutory infirmities: (1) where a statute fails to provide adequate notice to the public as to the proscribed conduct; (2) where a statute fails to provide sufficient guidance to prosecutors and police as to the means of enforcement; and (3) where a statute fails to provide the judiciary with sufficient guidance as to the statute's interpretation.
The most common application of the void-for-vagueness doctrine involves challenges to the adequacy of the notice a statute provides to the public. Under this aspect of the doctrine, we require that a penal statute "give reasonable notice of the conduct which it proscribes to a person charged *299 with violating its interdiction." Commonwealth v. Mikulan, 504 Pa. 244, 251, 470 A.2d 1339, 1343 (1983) (citing Commonwealth v. Heinbaugh, 467 Pa. 1, 5, 354 A.2d 244, 245 (1976)). At the heart of this imperative is the notion that "no one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." Pennsylvania State Bd. of Pharmacy v. Cohen, 448 Pa. 189, 200, 292 A.2d 277, 282 (1972) (citing Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939)).
This requirement does not import, however, that criminal statutes are "to be tested against the paradigms of draftsmanship. Rather, the requirements of due process are satisfied if the statute in question contains reasonable standards to guide the prospective conduct." Mikulan, 504 Pa. at 251, 470 A.2d at 1343. Furthermore, in making such a determination, we are ever mindful of the distinction that "[a] statute may be `vague' in the sense that it contains no ascertainable standard of conduct, or it may be `vague' in the sense that the ascertainable standard of conduct may or may not include certain types of conduct." Commonwealth v. Mack, 467 Pa. 613, 616, 359 A.2d 770, 772 (1976) (cited with approval by Commonwealth v. Adamo, 431 Pa.Super. 529, 637 A.2d 302 (1994)). "If the statute contains no standard of conduct . . . [it] will be declared unconstitutionally `vague' without regard to the particular conduct of the individual challenging the statute." Id. (citing United States v. Powell, 423 U.S. 87, 92, 96 S.Ct. 316, 319-20, 46 L.Ed.2d 228 (1975)). If, on the other hand, the statute encompasses an ascertainable standard, "the vagueness issue may be finally determined only with reference to the conduct of the person challenging the statute." Id.
Cases determining whether a statute is unconstitutionally vague for providing inadequate notice to the public are legion. In Cohen, supra, the Pennsylvania Supreme Court considered whether the State Board of Pharmacy's ("SBP") interpretation of 63 P.S. § 390-5(a) of the Pharmacy Act[13] would render the *300 statute unconstitutionally vague. Specifically, the SBP argued that despite the 13 enumerated prohibitions constituting "grossly unprofessional conduct," it could nonetheless exercise its discretion and make its own judgment as to whether a pharmacist's conduct rose to the level of gross unprofessionalism. Cohen, 448 Pa. at 196, 292 A.2d at 280.
The Supreme Court disagreed, finding that such an interpretation would render the statute unconstitutionally vague. In reaching this decision, the Court was cognizant of the fact that under the SBP's construction, the pharmacists of this Commonwealth would have no ascertainable standards as to what sort of conduct the State enjoined. As such, the Court concluded that the lack of standards would effectively deprive an individual of life, liberty, and property without due process of law. Id. at 198-200, 292 A.2d at 282.
In Mikulan, supra, the Pennsylvania Supreme Court responded to a constitutional challenge to 75 Pa.C.S.A. § 3731(a)(4). Section 3731(a)(4) provided that a "person shall not drive, operate or be in actual control of the movement of any motor vehicle while: . . . the amount of alcohol by weight in the blood of the person is 0.10% or greater." Mikulan, charged with violation of this statute, argued that it was unconstitutionally vague "because a person of ordinary intelligence performing the lawful act of consuming alcoholic beverages prior to driving has no reasonable way to ascertain beforehand when his blood alcohol level is about to reach the prohibited range." Mikulan, 504 Pa. at 251, 470 A.2d at 1343. Thus, according to Mikulan, an individual was left to guess whether his/her conduct was permitted or proscribed.
In rejecting the appellant's arguments, the Court focused primarily on the practical aspects of the statute. In the Court's view, the legislature squarely placed the risk of poor judgment upon the individual who had the choice, the drinking driver, and not upon the innocent victim of his/her erroneous judgment. Id. at 252, 470 A.2d at 1344. The Court reasoned that in placing this burden upon those who choose to imbibe *301 alcoholic beverages, the legislature provided clear notice that driving was not permitted following episodes of immoderate drinking. Id. Despite the fact that it is impossible to predict with mathematical certainty when one's blood alcohol level exceeds the legal limits, the Court found that the statute fully informed each individual of the risks concomitant with drinking and driving and the penalties associated with the assumption of that risk. Id. Thus, the Court held that the statute was not unconstitutionally vague.
In Pennsylvania Bar Assoc. v. Commonwealth, 147 Pa. Commw. 351, 607 A.2d 850 (1992), the Pennsylvania Bar Association (hereinafter "PBA") challenged, inter alia, the constitutionality of 75 Pa.C.S.A. § 1822, the so-called Motor Vehicle Financial Responsibility Law. The challenged provision required insurance carriers to report all "suspected" fraudulent claims to the Index Bureau and to include within these reports the names of all claimants, medical providers, repair shops, insurance adjusters, and attorneys representing claimants. 75 Pa.C.S.A. § 1822. Specifically, the PBA claimed that the statute was unconstitutionally vague in that its members were unable to determine what specific conduct is required to be reported and were, thus, unable to conform their behavior accordingly.
The Commonwealth Court agreed and struck the provisions in question as unconstitutionally vague. In making this determination, the court concluded that the lack of legislative definition of the word "suspected" would necessarily lead to arbitrary reporting and would prevent attorneys of ordinary intelligence from knowing what conduct is prohibited and from, therefore, acting in accordance with the strictures of the law. Id. at 369, 607 A.2d at 859.
Most recently, in Commonwealth v. Adamo, 431 Pa.Super. 529, 637 A.2d 302 (1994), this court had pause to consider whether 18 Pa.C.S.A. § 2910 was unconstitutionally vague. This statute made it unlawful for one to lure a child into a motor vehicle without the express or implied consent of the child's parent or guardian. Adamo, who was arrested and then convicted for violating this statute, claimed on appeal *302 that the statute should be held unconstitutionally vague in that it did not give notice with respect to the following: 1) as to the age of the child to which the law applies; 2) as to a precise definition of the term "lure"; and 3) as to what circumstances give rise to "implied consent" by the child's parents. Id. at 536-37, 637 A.2d at 306. In upholding the constitutionality of the statute, we determined that the law contained an ascertained standard of conduct and that, based upon the record, Adamo himself understood that his behavior was proscribed.[14] We concluded, therefore, that when a law has ascertainable standards and when a criminal defendant admittedly understands his conduct to be violative of those standards, a vagueness attack must fail, because, necessarily, the individual had notice that his/her conduct was unlawful. Id.
Although the void-for-vagueness doctrine focuses both on the quantum of notice a statute provides to the public and the degree to which the statute provides standards for governmental enforcement and interpretation, the United States Supreme Court has stated that the most important aspect is the requirement that the legislature establish minimum guidelines to govern law enforcement. Kolender, 461 U.S. at 357-58, 103 S.Ct. at 1858-59. This is so because "[w]here the legislature fails to provide such minimal guidelines, a criminal statute may permit a `standardless sweep [that] allows policemen, prosecutors, and juries to pursue their own personal predilections.'" Id. (citing Smith v. Goguen, 415 U.S. 566, 574, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605 (1974)). To withstand constitutional scrutiny under the vagueness doctrine, therefore, a statute must provide clear and explicit guidelines for those who are charged with law enforcement duties. Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298-99, 33 L.Ed.2d 222 (1972). To require anything less would open the door to arbitrary and discriminatory statutory application, offensive to our Constitution. Id. at 109, 92 S.Ct. at 2299.
In Kolender v. Lawson, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983), the United States Supreme Court considered *303 whether a California loitering statute, Cal.Penal Code § 647(e) (West 1970), was unconstitutionally vague as interpreted by the courts.[15] Specifically at issue was the California appellate courts' construction of the statute to require "that an individual provide `credible and reliable' identification when requested by a police officer who has reasonable suspicion of criminal activity to justify a Terry detention." Id. at 355-56, 103 S.Ct. at 1857. Moreover, "credible and reliable" identification was defined by the California Court of Appeals as "identification carrying reasonable assurance that the identification is authentic and providing means for later getting in touch with the person who has identified himself." Id. Additionally, a suspect was required to "account for his presence" when asked to do so by law enforcement officers. Id.
After carefully construing the language of the statute, the United States Supreme Court embarked on a void-for-vagueness analysis. In the course of its opinion, the Court indicated that the statute contained no standard for determining what a suspect had to do in order to satisfy a "credible and reliable" identification. Id. at 358, 103 S.Ct. at 1858-59. The Court further found that the law impermissibly vested, within the whims of any police officer, complete discretion to determine whether an individual has complied with the statute and is able to go on his or her way in the absence of probable cause to arrest. Id. Such a law, the Court concluded, despite the need for strengthened law enforcement, "furnishes a convenient tool for harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure, . . . and confers on the police a virtually unrestrained power to arrest and charge persons with a violation." Id. at 360, 103 S.Ct. at 1860 (citing Papachristou, *304 405 U.S. at 170, 92 S.Ct. at 847 and Lewis v. City of New Orleans, 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974)). Accordingly, the Court struck the statute as unconstitutionally vague.
In Orwell Township Supervisors v. Jewett, 132 Pa.Commw. 30, 571 A.2d 1100 (1990), Orwell Township challenged the trial court's finding that the Orwell Township Junkyard and Refuse Ordinance (hereinafter the "Junkyard Law"), 53 P.S. § 65758,[16] was unconstitutionally vague. Specifically, Orwell Township claimed, that although the Junkyard Law enabled the Township to refuse to issue a junkyard license solely for aesthetic reasons, the provision was not so vague as to be rendered unconstitutional. Id. at 31, 571 A.2d at 1101.
In rejecting the Township's argument, the Commonwealth Court focused primarily on the Junkyard Law's decided lack of qualifications as to its "aesthetic" requirement. The court reasoned that this lack of description would leave the statute's "interpretation, administration, and enforcement to the unbridled or ungoverned discretion, caprice or arbitrary action of the municipal legislative body. . . ." Id. at 36, 571 A.2d at 1103. Because such a statute is by definition incapable of uniform and consistent application, the court struck the Junkyard Law as unconstitutionally vague.
Finally, in Blanco v. Board of Private Licensed Schools, 158 Pa.Commw. 411, 631 A.2d 1076 (1993), Andrew Blanco, the owner of a bartending school, challenged a determination of the State Board of Private Licensed Schools (hereinafter "Board") that his school was subject to the State licensing requirements per 24 P.S. §§ 6501-6518 (hereinafter "Licensing Act"). The Licensing Act provided that the Board's power *305 to license is limited to "private licensed schools." 24 P.S. § 6502. Private licensed schools were defined as:
A school or classes operated for profit or tuition that provides resident instruction to prepare an individual to pursue an occupation in the skilled trades . . . .
Id. If a school meets this definition, then in order to operate in Pennsylvania, it must be licensed by the Board. The Licensing Act, however, provided several exemptions from inclusion within the definition of "private licensed school." Id. at 413, 631 A.2d at 1078. These exemptions included "a school maintained or a class conducted for training for the vocation of homemaking or to give training in public and other service occupations. . . ." Id. (emphasis added).
In challenging the Board's determination that his school was subject to this Commonwealth's licensing requirements, Blanco claimed that the Licensing Act was void-for-vagueness. More particularly, Blanco argued that the Licensing Act was unconstitutionally vague because it did not provide explicit standards to enable the Board to interpret the phrase "other service occupations." Id. at 415, 631 A.2d at 1078-79.
The Commonwealth Court agreed with Blanco's contentions and held that the Licensing Act was unconstitutionally vague. In reaching this conclusion, the court stated that the Licensing Act provided such incomplete guidance as to the meaning of the phrase "other service occupations," that, in order to determine which schools were exempt from State licensing requirements, the Board was forced to substitute the purely subjective criteria of individual Board members in place of a statutorily mandated standard. Id. at 417-19, 631 A.2d at 1080. The court concluded that without promulgated legislative regulations defining or listing what occupations are included within the phrase "other service occupations," the statute must be held unconstitutionally vague. Id.
The final application of the void-for-vagueness is the requirement that a statute provide explicit standards for judicial interpretation. A law is offensive to the traditional notions of due process if it fails to state with sufficient clarity the *306 consequences of its violation (i.e. the sentence to be imposed upon conviction). United States v. Batchelder, 442 U.S. 114, 123, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979). Just as an individual is entitled to be informed as to what conduct is prohibited by a criminal statute, so too is that individual entitled to be apprised of the penalties imposed for violation thereof.
To pass constitutional muster, therefore, a criminal statute must contain clear sentencing standards that are capable of consistent application by the judiciary; "for without such guidance, the law impermissibly delegates policy matters to judges and juries for resolution on an ad hoc and subjective basis. . . ." Grayned, 408 U.S. at 108-09, 92 S.Ct. at 2299. In other words, "a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves. . . judges and juries free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case." Giaccia v. Pennsylvania, 382 U.S. 399, 402-03, 86 S.Ct. 518, 520-21, 15 L.Ed.2d 447 (1966) (citing Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939)).
In Giaccia v. Pennsylvania, 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966), the United States Supreme Court considered whether a Pennsylvania statute, 19 P.S.A. § 1222 (1860) (hereinafter the "Costs Act"), which authorized a jury to assess costs upon a criminal defendant who had been acquitted, was unconstitutionally vague. In that case, a Pennsylvania grand jury indicted Giaccia and charged him with two counts of wantonly pointing a firearm at another person.[17] Following trial, Giaccia was acquitted on both counts, but the jury nonetheless assessed costs against him in the amount of $230.95, pursuant to the Costs Act. The Costs Act provided, inter alia, that:
in all cases of acquittals by the petit jury on indictments for [offenses other than felonies], the jury trying the same shall determine, by their verdict, whether the county, or the prosecutor, or the defendant shall pay the costs . . . and *307 whenever the jury shall determine as aforesaid, that the . . . defendant shall pay the costs, the court in which the said determination shall be made shall forthwith pass sentence to that effect, and order him to be committed to the jail of the county until the costs are paid, unless he give [sic] security to pay the same within ten days.
Giaccia, 382 U.S. at 400-01, 86 S.Ct. at 519-20 (citing the Costs Act).
On appeal to the United States Supreme Court, Giaccia argued that the Costs Act was unconstitutionally vague in violation of the Fourteenth Amendment's Due Process Clause, because it authorized "juries to assess costs against acquitted defendants . . . without prescribing definite standards to govern the jury's determination." Id. at 401, 86 S.Ct. at 520.
In reviewing this challenge, the Supreme Court initially noted that:
one of the basic purposes of the Due Process Clause has always been to protect a person against having the Government impose burdens upon him except in accordance with the valid laws of the land. Implicit within this constitutional safeguard is the premise that the law must be one that carries an understandable meaning with the legal standards that courts must enforce.
Id. at 403, 86 S.Ct. at 521. Applying this standard to the Costs Act, the Court was unable to uphold its constitutionality, as the Act contained no standards at all and placed no conditions of any kind upon the jury's power to impose costs upon an acquitted defendant. Such a law, the Court concluded, failed to meet minimum statutory requirements and was, thus, unconstitutionally vague. Id.
United States v. Batchelder, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979), provides another example of the Supreme Court testing the constitutionality of a statute under the judicial interpretation standard of the void-for-vagueness doctrine. At issue in Batchelder was whether the existence of two criminal statutes, with the same substantive elements, but with differing penalties for violation thereof, was unconstitutionally *308 vague for lack of definite standards for judicial interpretation.
In Batchelder, a federal criminal defendant was convicted of violating 18 U.S.C.S. § 922(h), a provision which forbade a previously convicted felon from receiving a firearm which has travelled in interstate commerce.[18] Upon conviction, the district court sentenced Batchelder to five years imprisonment, as authorized by 18 U.S.C.S. § 924(a).[19]
Batchelder filed a timely appeal to United States Court of Appeals for the Seventh Circuit, alleging that the existence of 18 U.S.C.S. § 1202(a), which covers the identical conduct proscribed by section 922(h), but which authorizes a maximum sentence of two years imprisonment,[20] rendered section 922(h) unconstitutionally vague. Upon review, the Seventh Circuit employed a traditional statutory construction analysis. After noting that the two statutes prohibited identical conduct, the court imposed the lesser two year sentence under section 1202(a). In so ruling, the Court of Appeals relied on the doctrine that ambiguities in criminal statutes are to be resolved in favor of the defendant. The Court of Appeals also *309 noted that the existence of these two statutes implicated "important constitutional protections," namely the void-for-vagueness doctrine. Batchelder, 442 U.S. at 117, 99 S.Ct. at 2201.
The United States appealed this decision, alleging that the statutes were unambiguous and, thus, were not unconstitutionally vague. The Supreme Court agreed and reinstated the original five year sentence. In reaching this decision, the Court noted that sentencing provisions pose constitutional questions "if they do not state with sufficient clarity the consequences of violating a given criminal statute." Id. at 123, 99 S.Ct. at 2204. In the Court's view, however, as the two statutes at issue unambiguously specified the conduct prohibited and the penalties available upon conviction, the statutes were not constitutionally infirm. Id. Simply because two statutes regulate the same conduct, neither detracts from the notice they provide to the public, nor creates uncertainty in their interpretation by the judiciary. Id. As long as the statutes do not discriminate against a class of people, the statutes do not offend due process, and the choice of under which statute to proceed is within the sound discretion of the prosecution. Accordingly, the Supreme Court determined that the statutes were not unconstitutionally vague.[21]
Cognizant of the severity of the crime to which Berryman entered his plea, I state with unreserved assurance that as *310 citizens of this Commonwealth and this nation they are nonetheless entitled to the full range of protections accorded by the Due Process Clause of the United States Constitution. Due process of law requires that each individual be apprised of prohibited conduct and the penalties for violation thereof. Similarly, due process mandates that a law provide sufficient standards for judicial interpretation. These axioms comprise the foundation for the void-for-vagueness doctrine.
Applying this doctrine to the case at hand produces the inescapable conclusion that the Probation Statute does not comport with constitutional requirements. By definition, the Probation Statute is unconstitutionally vague because it is susceptible to multiple constructions; it neither provides notice of the penalties and programs available to those who are charged under 35 P.S. § 780-113(a)(14), (30), or (37), nor supplies sufficient standards for consistent and accurate judicial interpretation. The very division of this court speaks volumes as to the infirmity of subsection (vi) of the Probation Statute. If nine reasonable judges on this court cannot divine the meaning of this statute, how can an accused ever hope to receive adequate notice and how can a trial court be assured its interpretation is in accordance with the mandate of the General Assembly.
When we chose to don our judicial ermine, we swore an oath to interpret the laws of this Commonwealth and to ensure with unabashed vigilance that the laws comport with the Constitution. In the case at hand, the Probation Statute fails to meet this basic requirement. No matter which view one thinks more likely, the very fact that two interpretations exist prompts this court to action. We should not and cannot countenance a provision capable of such varied construction. I submit, therefore, that it is our responsibility to strike down 35 P.S. 780-117(1)(vi) as unconstitutionally vague.
Finally, even if this court militates in favor of the majority's construction of the Probation Statute, it is my view that we must permit Raymond Berryman to withdraw his plea of nolo contendere and proceed to trial. This is so because at the *311 time Berryman was awarded probation without verdict, Judge Quinones Alejandro informed Berryman that:
Should I decide that you are not eligible for Section 17 and that for some reason something comes out at the sentencing part and I decide not to consider you for Section 17, you will be allowed to withdraw your plea of no contest and you will be tried before another Judge.
Reproduced Record at 49a-50a. Because Judge Alejandro expressly made Berryman's nolo contendere plea contingent upon the availability of probation without verdict, we must honor Judge Alejandro's promise and permit Berryman to withdraw his plea and proceed to trial.
Accordingly, I dissent.
BECK, Judge, concurring:
I reluctantly conclude that the only interpretation of the statute at issue is that adopted by the majority. However, I question the legislative wisdom of denying small time drug dealers, who are also drug addicted, an opportunity for an alternative method of punishment and rehabilitation. It appears that severity of sentencing has not inhibited the drug trade. Imposition of prison sentences in cases such as the instant one contributes to prison overcrowding, which is at a disturbing level.
This court is bound to interpret and enforce the laws enacted by the legislature in the manner in which they were intended. On a policy level the legislature might be well advised to reconsider this provision of the statute.
Under the language of the statute, however, a Section 17 sentence is not available for appellant.
TAMILIA, Judge, in support of remand:
I write separately and join neither the majority nor dissent because I do not believe either Opinion resolves the issue of the meaning of the term "was charged" in the wording of 35 P.S. § 780-117.
*312 Starting at the end rather than the beginning, I believe the legislature intended to exclude primary drug dealers or manufacturers who fell into the category of section 780-117(1)(vi). Whether Berryman fell into that category and is entitled to probation without verdict is not clear from the record. The term "was charged" is unfortunate because it introduces ambiguity where none was intended. Reading the statute on probation without verdict and relating it to the law which it amended, the intent of the legislation was to eliminate loopholes and not to extend the benefit of this very beneficial program to persons who are the purveyors and perpetuators of the drug problem under the guise that they are victims because they too abuse drugs. Without question there is a fine line between sellers and users with many, if not most, users being sellers at one time or another in order to obtain money to sustain their addiction. To eliminate all sellers would eliminate virtually all users, making the program virtually worthless. To permit primary dealers to have one free shot at avoiding a conviction would serve only to cloak them with a partial immunity and allow them to continue their ravishing of society. District attorneys do select or screen the primary dealers from the incidental sellers and have substantial influences on the court when the decision is made as to whether the charge is possession or possession with intent to manufacture or deliver. Experience tells us that when the defendant is primarily a user, the possession with intent to deliver charge will be dropped, whereas if there is a pattern of delivery it will be pursued. The law is written in very specific terms as needed to fulfill constitutional mandates. We can debate forever what the meaning is of "was charged," indicating that it is an unfortunate choice of words and introduces patent ambiguity where the intent of the statute is otherwise clear. Under these circumstances, unless the court and the district attorney's office have a uniform understanding and policy as to the virtual reality of dealing with a myriad of cases with hundreds of variations, we cannot help them by giving them a definition that only applies to two cases. This is something which must be addressed by the legislature, which alone can detail how the courts must construe the legislation.
*313 As for now, I believe "was charged" must include "is charged" when possession with intent to deliver is contained in the complaint when probation without verdict is proposed. It does not mean that there must have been a prior charge of drug use or possession with intent to deliver to disqualify a defendant from probation without verdict. This means that in every case where such a charge is made, the court loses its capacity to make such a finding. It must be left to another day to determine whether the mere charge, even after dismissal or acquittal, nullifies the effect of the act. The legislature could clarify this also when it clarifies the phrase "was charged."
I would prefer to see the statute struck because of vagueness, but because the legislative intent is clear, this may not be done sua sponte by this Court. My solution would be to remand this case for a sentencing hearing which would seek to determine whether these defendants were primary or incidental drug dealers with sentences to follow accordingly. If they were dealers in the accepted use of the term, they should be sentenced accordingly. If they were users involved in incidental sales to sustain their habits, probation without verdict is appropriate. With these instructions, I believe the trial court may make a reasoned and fair disposition. As a policy matter, the greatest burden on the penal system in this state and country at large is a result of imprisonment on drug charges. Neither an uncritical jailing of drug users nor a lenient approach toward primary dealers will serve the community and lead to a reduction in the problem. Probation without verdict is a reasonable and workable approach in dealing with the problem intelligently, saving both lives and valuable prison resources when wisely used. I believe direction to the courts as to the means of achieving the legislative intent serves these purposes.[1]
McEWEN, J., joins.
NOTES
[1] § 780-113. Prohibited acts; penalties

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:
* * * * * *
(14) The administration, dispensing, delivery, gift or prescription of any controlled substance by any practitioner or professional assistant under the practitioner's direction and supervision unless done (i) in good faith in the course of his professional practice; (ii) within the scope of the patient relationship; (iii) in accordance with treatment principles accepted by a responsible segment of the medical profession.
* * * * * *
(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.
* * * * * *
(37) The possession by any person, other than a registrant, of more than thirty doses labeled as a dispensed prescription or more than three trade packages of any anabolic steroids listed in section 4(3)(vii).
35 P.S. § 780-113(a)(14), (30), and (37).
[2] The original statute was enacted on April 14, 1972, and was amended on October 26, 1972. See infra for text of the amended 1972 statute. The statute was again amended on April 16, 1992. See supra for text of 1992 amended statute.
[3] We realize that the prior statute uses the term "is charged" to refer to the proceeding in which probation without verdict is to be imposed. However, the prior statute only stated one exclusion. The current statute lists six exclusions to those who are eligible to receive probation without verdict.

In the present statute, the term "is charged" is used in section 17(1)(iv). It is obvious that subsection (iv) of section 17(1) refers to charges to which there have been no guilty or nolo contendere pleas or adjudication of guilt. Because the same language must be interpreted the same way, the legislature could no longer use "is charged" to refer to charges which have been resolved through a plea of guilt or nolo contendere. Thus, the legislature used other language to refer to the charges in the proceeding in which probation without verdict is sought. The legislature used different verb tenses in the present section 17(1) consistently. Interpreting each of the verb tenses consistently allows the statute to have a sensible meaning and effect.
[4] There is also a letter written by Representative O'Brien which was circulated to all the members of the House regarding the sponsorship of the amended bill known now as section 17. Again, the Commonwealth and appellee disagree. Appellee claims it is a party advertisement and that it promotes a different version of the statute than the one which was enacted by the legislature. The Commonwealth, however, claims that it was not a party advertisement but a communication regarding the necessity of an amended section 17. Further, the Commonwealth avers, the purpose behind the statute did not change, only the wording of the statute changed. Thus, the Commonwealth posits, we should consider the letter when we determine the legislative intent behind section 17. The Commonwealth concedes that the letter is not dispositive of the legislative intent.

The letter in question was sent eight months prior to the passage of section 17. The amendment of section 17 it supported did not contain the inclusion of several categories of persons not eligible to receive probation without verdict. Rather, the proposed amendment stated, probation without verdict could not be imposed by a trial court without the district attorney's approval. In his letter, Representative O'Brien states that under the new section 17, a "drug dealer will not walk away from his crime with a clean record; as he does under present law. The drug dealer, with a conviction on his record, would have increased incentive to stop his criminal activities."
While this letter supports the Commonwealth's interpretation of section 17(1)(vi), the letter was written eight months prior to the enactment of section 17. Thus, the letter should not be considered a contemporaneous statement.
[5] At the hearing at which the nolo contendere plea was entered and sentence imposed, the trial court informed appellee that if he was not eligible for probation without verdict, then appellee would be permitted to withdraw his plea of nolo contendere. N.T. 12/24/92 at 18. Whether appellee should be permitted to withdraw his plea is not an issue which we can decide, but is a decision for the trial court.
[1] Speaking on behalf of the Probation Statute, its Sponsor, Representative O'Brian, stated that the Probation Statute "is a valuable tool to end the clear abuse of section 17 dispositions and would help put an end to the frustration of the plain legislative purpose; that is, to help rehabilitate first-time drug users." 1992 Pa. Legis. Journal  House (January 29, 1992).
[2] Section 780-113(14) makes it a crime for a member of the medical profession to dispense controlled substances unless it is done in the course of treatment, according to accepted medical practices. 35 P.S. § 780-113(14). Section 780-113(30) makes it a crime to manufacture, deliver, or possess with the intent to manufacture or deliver controlled substances. 35 P.S. § 780-113 (30). Section 780-113(37) makes it a crime to possess more than 30 doses of anabolic steroids, if a the possessor is not a registrant. 35 P.S. § 780-113(37).
[3] Section 1903 states that "words and phrases shall be construed according to the rules of grammar and according to their common and approved usage." 1 Pa.C.S.A. § 1903(a).
[4] This result is reached, according to the majority, because section (i) renders ineligible to receive probation without verdict those persons who have previously been charged and convicted under 35 P.S. § 780-113(14), (30), or (37), and section (iii) excludes persons who had been placed on Accelerated Rehabilitation Disposition after being charged with the relevant offenses.
[5] Section 1921(c) provides that:

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:
(1) The occasion and the necessity for the statute.
(2) The circumstances under which it was enacted.
(3) The mischief to be remedied.
(4) The object to be attained.
(5) The former law, if any, including other statutes upon the same or similar subjects.
(6) The consequences of a particular interpretation.
(7) The contemporaneous legislative history.
(8) Legislative and administrative interpretations of such statute.
1 Pa.C.S. § 1921(c).
[6] Of course, Sisyphus was the legendary King of Corinth who was condemned to roll a boulder up a hill in Hades, only to have it roll down each time he neared the top.
[7] 35 P.S. § 780-117(1)(i) and (ii). Subsection (i) precludes persons previously convicted of drug charges under Title 35 from receiving probation without verdict. Subsection (ii) prohibits individuals previously convicted of a misdemeanor or felony from receiving probation without verdict.
[8] 35 P.S. § 780-117(1)(iii). Subsection (iii) provides that persons who have been placed on ARD are ineligible for probation without verdict.
[9] The Probation Statute provides that only individuals who can prove drug dependency are eligible to receive probation without verdict. 35 P.S. § 780-117.
[10] The majority notes that I have raised this issue sua sponte. The majority concedes, however, that the appellee has raised other constitutional arguments in his appellate brief. In light of the fact that the appellee has challenged, in general, the constitutionality of the statute, and, more importantly, in order to avoid substantial injustice, I find it necessary to address this argument.
[11] The Fifth Amendment states that: "No person shall . . . be deprived of life, liberty, or property without due process of law. . . ." U.S. Const. amend. V. The Fourteenth Amendment states: "nor shall any State deprive any person of life, liberty, or property, without due process of law. . . ." U.S. Const. amend. XIV, § 1.
[12] The notion that one may not be deprived of life, liberty, or property without due process of law can be traced back to the time of King Solomon, or approximately 971 B.C. See 1 Kings 16-28 (the wisdom of Solomon).
[13] Section 390-5(a)(9) provides that the SBP has the power to revoke a pharmacist license if the pharmacist is guilty of "grossly unprofessional conduct." The statute then enumerates 13 prohibitions constituting such conduct. 63 P.S. § 390-5(a)(9).
[14] The record indicated that Adamo stated to the intended victim that "you can't tell anybody . . . I'll get into trouble. You're a minor."
[15] Section 647(e) provides:

Every person who commits any of the following acts is guilty of disorderly conduct . . . (e) Who loiters or wanders upon the streets or from place to place without apparent reason or business and who refuses to identify himself and to account for his presence when requested by any peace officer so to do, if the surrounding circumstances are such as to indicate to a reasonable man that the public safety demands such identification.
Cal.Penal Code § 647(e) (West 1970).
[16] The Junkyard Law provides:

Upon receipt of an application by the Board, the Board shall issue a license or shall refuse to issue a license to the person applying therefore, after an examination of the application and taking into consideration the suitability of the property proposed to be used for the purposes of the license, the character of the properties located nearby, and the effect of the proposed use upon the Township, both economic and aesthetic.
Section 5 of the Orwell Township Junkyard and Refuse Ordinance (emphasis added).
[17] 18 P.S.A. § 4716. This crime is characterized as a misdemeanor.
[18] Specifically, the statute provides:

It shall be unlawful for any person 
(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year: . . .
to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.
18 U.S.C.S. § 922(h).
[19] Section 924(a) provides:

Whoever violates any provision of this chapter . . . shall be fined not more than $5,000, or imprisoned not more than five years, or both, and shall be eligible for parole as the Board of Parole shall determine.
18 U.S.C.S. § 924(a) (emphasis added).
[20] Section 1202(a) provides:

Any person who 
(1) has been convicted by a court of the United States, or of a State or any political subdivision thereof of a felony . . .
and who receives, possesses, or transports in commerce or affecting commerce . . . any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.
18 U.S.C.S. § 1202(a) (emphasis added).
[21] The Pennsylvania Supreme Court expressly adopted this reasoning in Commonwealth v. Parker White Metal Co., 512 Pa. 74, 515 A.2d 1358 (1986). In Parker White, the Court determined that although under 35 P.S. § 6018.-606(a) & (b) the prosecution has discretion to charge a defendant for the commission of the identical crime, with either a summary offense or a third-degree misdemeanor, the statutes provided sufficient notice to the public and provided clear provisions for the judiciary to impose sentence. Thus, the Court determined that the provisions were not unconstitutionally vague.

Query whether such statutes are an unlawful delegation of the legislative power to the executive branch of government, i.e., the police or the District Attorney, as to what statute to use in indicting the defendant? The police or the District Attorney could punish certain persons by indicting them with a misdemeanor rather than a summary offense, and reward their friends or neighbors by indicting them merely with a summary offense.
[1] I agree with Judge Cirillo that as to Berryman if probation without verdict cannot be sustained, he must be given the opportunity to withdraw his plea of nolo contendere.