J-A26008-23

2024 PA Super 99

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
RICKY G. VANCE :
:
Appellant : No. 2886 EDA 2022

Appeal from the Judgment of Sentence Entered October 20, 2022

In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0003484-2021

BEFORE:  DUBOW, J., McLAUGHLIN, J., and KING, J.

OPINION BY DUBOW, J.:                                    **FILED MAY 15, 2024**

Appellant, Ricky G. Vance, appeals from the October 20, 2022 judgment of sentence of life imprisonment entered in the Montgomery County Court of Common Pleas following his jury conviction of First-Degree Murder and Criminal Conspiracy to Commit First-Degree Murder[1] arising from his role in the November 28, 2020 murder-for-hire of the Victim.  Appellant challenges numerous evidentiary rulings.  After careful review, we affirm Appellant's judgment of sentence.

---

[1] 18 Pa.C.S. §§ 2502(a) and 903(a), respectively.

The relevant facts and procedural history are as follows. At approximately 10:00 PM on November 28, 2020, a person or persons fatally shot the Victim at the intersection of East Handcock and Church Roads in Lansdale, Montgomery County.

Through the course of its investigation into the Victim's murder, the police developed a theory that Chong Ling Dan had set into motion a murder-for-hire scheme to retaliate against his former paramour by hiring two men to kill the Victim, a woman with whom Mr. Dan's former paramour was currently romantically involved.

The police investigation into the murder revealed that a distinctive black Cadillac, later identified as belonging to Appellant, followed the Victim's car on and then off the Pennsylvania Turnpike. In addition, witness testimony and surveillance video depicted Appellant's Cadillac pull up to the Victim's vehicle at the intersection where the crime occurred and then leave immediately after multiple gunshots were fired. The passenger side of Appellant's Cadillac later tested positive for gunshot residue. Ultimately, police discovered that Terrence Marche had borrowed Appellant's Cadillac on the night of the murder.

The evidence also indicated that, although Mr. Dan and Mr. Marche did not know each other, Appellant knew both Mr. Dan and Mr. Marche.

The Commonwealth charged Appellant with the above crimes.[2] At trial, and relevant to the instant appeal, the Commonwealth presented Montgomery County Detective Bureau Lieutenant William Mitchell as an expert in call detail record analysis and cell phone records. He testified that he reviewed cell phone records for Appellant's cell phone, for Mr. Dan's cell phone, and for two of Mr. Marche's cell phones, and generated reports. Lieutenant Mitchell testified extensively regarding the numerous dates and times that the cell phone activity and Google GPS location data indicated that the cell phones and, thus, the men, had been together. These records included data indicating that in the days leading up to the murder, Appellant and Mr. Dan had been together, and on the night of the murder Appellant's and Mr. Marche's cell phones were together. Appellant lodged numerous objections to the Commonwealth's use of the Google GPS location data.[3] The trial court overruled each of these objections.

---

[2] The Commonwealth also charged and convicted Mr. Dan of the same offenses. Police have been unable to locate Mr. Marche and he has not been charged for his role in the scheme.

[3] As we will discuss in detail *infra*, Appellant objected to the admission of the Google GPS location data on the grounds that it was hearsay and that the Commonwealth had failed to properly authenticate it. He also objected to the testimony of, and the expert report prepared by, the Commonwealth's expert witness, Lieutenant William Mitchell, asserting that Lieutenant Mitchell was not qualified to offer evidence pertaining to the accuracy of Google GPS location data, and to the admission of Commonwealth's Exhibit C29-D—a certification from Eugene Maduewesi, Google's custodian of records— regarding the GPS data.

Appellant testified in his own defense, claiming that he was not involved in the murder, even though his Cadillac had been used in the crime. He asserted that Mr. Marche had asked Appellant to borrow the Cadillac and Appellant had agreed. Appellant claimed that he did not know why Mr. Marche wanted to borrow the Cadillac and that Appellant did not need money and would not participate in a murder-for-hire scheme. Relevantly, Appellant also sought to testify about certain statements purportedly made to him by Mr. Marche.[4] The Commonwealth objected to this testimony on hearsay grounds and the trial court sustained the objection and precluded this testimony.

A jury convicted Appellant of First-Degree Murder and Criminal Conspiracy to Commit First-Degree Murder. On October 20, 2022, the trial court sentenced Appellant to a term of life imprisonment. This timely appeal followed.[5]

Appellant raises the following six issues for our review:

I. Whether the trial court erred in admitting at trial Google GPS location evidence, through the testimony of Lieutenant William Mitchell and his expert reports, in that the Google GPS location information constitutes inadmissible hearsay

---

[4] In particular, Appellant sought to testify that on the night of the murder, Mr. Marche told Appellant that he wished to borrow Appellant's vehicle to "see a broad and take care of some business" and that the next day in response to questioning by Appellant, Mr. Marche made the statements "I did some fucked up shit . . . its better you not know about it." N.T. Trial, 9/20/22, at 229-30. Appellant argued that these statements were not hearsay because he was offering them not for their truth but to explain his state of mind and subsequent course of conduct and that excluding this testimony violated his due process rights. *Id.* at 230-31.

[5] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

and its admission violated Appellant's Sixth Amendment right to confront witnesses?

II.     Whether the trial court abused its discretion in admitting at trial Google GPS location information, through the testimony of Lieutenant William Mitchell and his expert reports, in that the Google proprietary GPS location information was not properly authenticated by foundational evidence or testimony by a witness with personal knowledge identifying and establishing a proper foundation that the machines, processes and algorithms used by Google to generate the location information, produce consistent, reliable and accurate results?

III.    Whether the trial court abused its discretion in admitting Commonwealth's Exhibit C-29D which was proffered as a certification by Google's Custodian of Records but which contained [a] statement without any foundation by the custodian of records that Google's "electronic process or system [for generating GPS location information] produces an accurate result" and that "[t]he accuracy of Google's electronic process and system is regularly verified by Google," where such statement constituted inadmissible hearsay and its admission violated [A]ppellant's constitutional right to confrontation, and was further admissible because it constituted an expert opinion, by a person not properly qualified as an expert in court, as to the accuracy of the location information produced by Google's unknown technical process for generating GPS location information?

IV.     Whether the GPS location evidence introduced through the expert testimony of Lieutenant Mitchell and his expert reports was properly introduced at trial as information relied upon by an expert, where Lieutenant Mitchell merely served as a conduit for communication or parroting to the jury the GPS location information generated by Google and Google's assessment (in meters) of the accuracy of that information, where Lieutenant Mitchell did not participate in the generation of the data or the assessment of its accuracy, was unfamiliar with and had no knowledge of the algorithm or technical protocols used by Google's automated process for generating such data and its accuracy, and, further where the [c]ourt did not instruct the jury that any Google location information that Lieutenant Mitchell relied on in

rendering his opinions should not be used as substantive evidence?

V. Whether the trial court abused its discretion in precluding as inadmissible hearsay, [] Appellant from testifying that on the night of the killing, Terrence Marche told Appellant that he wished to borrow Appellant's vehicle to "see a broad and take care of some business" and that the next day in response to questioning by Appellant, Marche made the statements "I did some fucked up shit . . . its better you not know about it," where the statements were being offered solely to show Appellant's subsequent course of conduct in the days and weeks following the killing in communicating more frequently with Marche, and in denying that he lent his car to anyone that night in his interview with detectives, where the probative value of the statements was not in any way dependent on the truth of the statements?

VI. Did the trial court's preclusion of the aforesaid statements by Marche, that he wished to borrow Appellant's vehicle to "see a broad and take care of some business" and that the next day in response to questioning by Appellant, Marche made the statements "I did some fucked up shit . . . its better you not know about it," deny Appellant a fair and full opportunity to assert a complete defense in violation of Appellant's right to due process under both the Pennsylvania and United States Constitutions?

Appellant's Brief at 4-7 (reordered for ease of disposition; suggested answers omitted).

**A.**

Appellant's issues require us to consider the trial court's rulings on the admissibility of evidence. We review such determinations for an abuse of discretion. *Commonwealth v. Thompson*, 106 A.3d 742, 754 (Pa. Super. 2014). An abuse of discretion is "the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,] or partiality, as shown by the evidence of record."

*Commonwealth v. Harris*, 884 A.2d 920, 924 (Pa. Super. 2005) (citations omitted).

In addition, Appellant's claim that the trial court's rulings violated his rights under the Confrontation Clause is a question of law which we review *de novo.* ***Commonwealth v. Yohe***, 79 A.3d 520, 530 (Pa. 2013).

**B.**

In his first three issues, Appellant challenges the admission of the Google GPS location data obtained from his cell phone as hearsay, not properly authenticated, and violative of his Confrontation Clause rights. We address each claim *seriatim*.

**Hearsay**

Appellant first claims that the Google GPS location evidence admitted at trial by way of Lieutenant Mitchell's expert report and testimony is inadmissible hearsay. Appellant's Brief at 24-32.

"[H]earsay is an out of court statement offered for the truth of the matter asserted and is inadmissible unless it falls within an exception to the hearsay rule." ***Commonwealth v. Manivannan***, 186 A.3d 472, 482 (Pa. Super. 2018) (citation omitted); Pa.R.E. 801(c).

Pennsylvania's hearsay rule explains that hearsay is a statement that: "(1) the declarant [did] not make while testifying at the current trial or hearing and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c)(1)-(2). The Rule defines a "statement" as "a

**person's** oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion," and a "declarant" is "the **person** who made the statement." *Id.* at 801(a)-(b) (emphasis added).

In *Commonwealth v. Wallace*, 289 A.3d 894 (Pa. 2023), our Supreme Court recently held that GPS data is not hearsay evidence. *Id.* at 907-08. The *Wallace* Court explained that GPS location data is not a statement made by a person; rather, it is data collected electronically. *Id.* at 904. As such, GPS location data cannot constitute hearsay because Rule 801 is clear that "a statement is a written or oral assertion of *a* **person**." *Id.* (emphasis in original). Accordingly, pursuant to the holding in *Wallace* and the plain language of Rule 801, an automatically generated GPS record, like the record at issue in this case, does not constitute a statement, and therefore, is not hearsay. Appellant's first claim, thus, fails.

**Authentication**

Appellant next asserts that the trial court abused its discretion in admitting the Google GPS location data because the Commonwealth failed to properly authenticate it. Appellant's Brief at 32-35. We disagree.

Business records are admissible if

(A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, **or by a certification** that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6)(A)-(E) (emphasis added).

Additionally, "[a]uthentication generally entails a relatively low burden of proof and requires only, as stated in Rule of Evidence 901, that the proponent 'produce evidence sufficient to support a finding that the item is what the proponent claims it is.'" ***Commonwealth v. Kurtz***, 294 A.3d 509, 527 n.12 (Pa. Super. 2023), *appeal granted*, 2023 WL 7123941 (Pa. Oct. 30, 2023) (citing Pa.R.E. 901(a)). We also note that a trial judge when deciding any preliminary questions about, *inter alia*, the admissibility of evidence is not bound by evidence rules, except those pertaining to privilege. Pa.R.E. 104(a).

Some evidence is self-authenticating such that it "require[s] no extrinsic evidence of authenticity in order to be admitted[.]" Pa.R.E. 902. Pursuant to Rule 902(11), a record of a regularly conducted activity is self-authenticating if it is accompanied by a certificate of the custodian. In particular, Rule 902(11) provides that an original or copy of a record of a regularly conducted activity is self-authenticating if the record "meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person[.]" Pa.R.E. 902(11).

Rule 803(6) permits the admission of "records of a regularly conducted activity" over a hearsay objection if certain conditions are met. Subsections (A) through (C) of the rule require that:

(A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;

(C) making the record was a regular practice of that activity[.]

Pa.R.E. 803(6)(A)-(C).

Here, the trial court concluded that the Google GPS location records, whose authenticity Google's custodian of records certified, were admissible as self-authenticating business records. N.T. Trial, 9/21/22, at 116. We agree. In the Certification, the Custodian of Records states that Google servers record this data automatically at the time, or reasonably soon after, it is entered or transmitted by the user. He also explains that the data is kept in the course of this regularly conducted activity, and that it was made by regularly conducted activity as a regular practice of Google. Accordingly, the trial court did not abuse its discretion in admitting the Google GPS location data over Appellant's objection.[6]

---

[6] Authentication of computer-generated data or reports under Rule 902(11) is proper under the current iteration of the Rules of Evidence and existing precedents. Because the records were permissibly authenticated in this way, there was no need for a determination of the accuracy or reliability of the data as part of the authentication process. *See Wallace*, 289 A.3d at 907 (stating "[t]he best way to advance the truth-seeking process with respect to

**Confrontation Clause**

Appellant argues that the admission into evidence of the GPS location data violates his rights under the Confrontation Clause. Appellant's Brief at 29-32. We reject this argument for several reasons.

First, as in **Wallace**, there is no human declarant to be subject to a "confrontation" since, as the Supreme Court pithily stated in **Wallace,** "a machine cannot be cross-examined." 289 A.3d at 907. Additionally, the right to confront witnesses applies to "testimonial statements." **See Ohio v. Clark,** 576 U.S. 237, 243 (2015) (citing **Crawford v. Washington,** 541 U.S. 36, 54 (2004)); **see also Yohe**, 79 A.3d at 531. A statement is testimonial if its primary purpose is "to establish or prove past events potentially relevant to **a later criminal prosecution.**" **Commonwealth v. Brown,** 185 A.3d 316, 319 n. 3 (Pa. 2018) (emphasis added). Here, Google obtained and retained the GPS location data as part of its ordinary business, which is completely unrelated to criminal prosecutions. Google did not obtain or retain the GPS location data primarily for a possible criminal case. Thus, the trial court's

_____

computer-generated] 'statements' is not through cross-examination of the machine operator, but through the process of authentication," and noting that Rule 901(9) permits authentication of a "process or system" with "[e]vidence describing a process or system and showing that it produces an accurate result[.]") (citation omitted). The Supreme Court, however, may choose to address whether the trial courts need further guidance to determine the means by which parties may raise the accuracy and reliability concerns identified in **Wallace** when machine-generated data is authenticated as a business record.

- 11 -

admission into evidence of the GPS location data did not violate Confrontation Clause precedent.

**C.**

In his third issue, Appellant asserts that the trial court erred in admitting Commonwealth Exhibit C29-D, the certification of Google's custodian of records regarding the accuracy of, and Google's process for generating, the Google GPS location data ("Certification"). Appellant's Brief at 36-41. In the Certification, Google's custodian of records stated that he has personal knowledge of the facts in the Certification and that he is familiar with how Google location records are "created, managed, stored and retrieved." Exhibit C29-D. He also stated that Google's system produces an accurate result because Google regularly verifies the accuracy of the results and that Google makes and retains the records pertaining to the geographical coordinates, and Google servers record the data automatically at the time or reasonably soon thereafter.

Appellant asserts that the statements in the Certification regarding the accuracy of the GPS location data are inadmissible hearsay. Appellant's Brief at 36. He further asserts that the Certification "constitutes an expert opinion by a mere custodian of records who was not qualified as an expert witness with the necessary technical knowledge to opine about the accuracy of Google's processes." *Id.* Appellant baldly contends that, because Google generates its GPS location data through "undisclosed review protocols, unidentified machinery, and secret proprietary software that is all technical in

- 12 -

nature, the custodian's certification contained expert opinion testimony with regard to the data's accuracy that "does not fall within that which can be determined by an ordinary person." *Id.* at 37.

We note as an initial matter that these arguments address the trial court's decision to admit into the evidence the Certification and not whether the trial court properly authenticated the GPS location data. These are two separate and distinct issues, although both issues challenge the reliability of the GPS location data but do so on different legal paths. As discussed above, the trial court properly found, considering the information in the Certification, that the Commonwealth had properly authenticated the GPS location data.[7] The issue before us now is whether the trial court properly admitted into evidence the Certification. Before addressing that issue, however, we first address whether the admission of the Certification into evidence constituted harmless error.

"Under the harmless error doctrine, we must vacate the order on review to correct the error unless we are convinced beyond a reasonable doubt that the error is harmless." ***Commonwealth v. Murray***, 248 A.3d 557, 576 (Pa. Super. 2021) (citation and internal quotation marks omitted).

> Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted

---

[7] We note that a trial judge when deciding any preliminary questions about, *inter alia*, the admissibility of evidence is not bound by evidence rules, except those on privilege. Pa.R.E. 104(a). Thus, the trial court correctly relied on the Certification when evaluating whether that the Commonwealth had properly authenticated the GPS location data.

- 13 -

evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Fitzpatrick***, 255 A.3d 452, 483 (Pa. 2021) (citations omitted); ***Commonwealth v. DeJesus***, 880 A.2d 608, 614 (Pa. 2005). In other words, "an evidentiary error of the trial court will be deemed harmless on appeal where the appellate court is convinced, beyond a reasonable doubt, that the error could not have contributed to the verdict." ***DeJesus***, 880 A.2d at 614.

In this case, the jury's only exposure to the Certification was Appellant's counsel's objection to the introduction of the Certification into evidence:

[Commonwealth]: I'm sorry, 29D is the certification for those records.

[Appellant's Counsel]: . . . I also have an objection to 29D. It is a hearsay objection and it is an expert opinion expressed by a custodian of records. . . .

The Court: All right, the objection is overruled. Admitted.

N.T. Trial, 9/21/22, at 31.

We emphasize that the Commonwealth did not read information from the Certification into the record, publish the Certification to the jury, include the contents of the Certification in its closing argument, or otherwise provide the information in the Certification to the jury. Accordingly, since the jury was not aware of the information contained in the Certification, we are convinced beyond a reasonable doubt that the trial court's admission of the Certification into evidence could not have "contributed to the verdict." ***See DeJesus***, 880

A.2d at 614.[8]  Thus, the admission of the Certification into evidence was harmless error.

## D.

In his fourth issue, Appellant asserts that the trial court abused its discretion in permitting Lieutenant Mitchell to offer an expert opinion about the Google GPS location data "without requiring his opinion to be based on facts or data that he was aware of and/or personally observed in violation of Pa.R.E. 703."  Appellant's Brief at 41.  Appellant contends that Lieutenant Mitchell "lacked any personal knowledge of how Google's GPS location information is obtained, stored and/or verified for accuracy[,]" "does not know anything about Google's proprietary information[,]" and "simply repeats and

_____

[8] Appellant also claims that the trial court's admission of the Certification into evidence violated his constitutional right to confront witnesses.  Appellant's Brief at 40-41.  Following our review of the notes of testimony, we observe that Appellant did not object at trial to the admission of the Certification on Confrontation Clause grounds.  **See** N.T. Trial, 9/21/22, at 31 (where counsel argues "It's a hearsay objection and it's an expert opinion expressed by a custodian of records."), 117 (where counsel argues "With regard to the certification, you recall I had made an objection to a statement that was contained in there. . . . This certification of a statement by a custodian of records that says the Google location information is deemed accurate and verified as accurate.  I would submit that is an expert opinion by the custodian of records not present in [c]ourt and qualified as an expert witness.  So the objection there was improper[.]").  Accordingly, Appellant has waived this claim.  **See Commonwealth v. Lopez**, 57 A.3d 74, 82 (Pa. Super. 2012) ("If counsel states the grounds for an objection, then all other unspecified grounds are waived and cannot be raised for the first time on appeal."); **Commonwealth v. Berryman**, 649 A.2d 961, 973 (Pa. Super. 1994) ("The Pennsylvania Supreme Court has clearly held that constitutional issues . . . are waived if not properly raised in the trial court"); **Commonwealth v. Sauers**, 159 A.3d 1, 10-11 (Pa. Super. 2017) (finding waiver and recognizing that Appellant's failure to preserve his Confrontation Clause claim in the trial court was not cured by including the claim in his concise statement).

parrots [Google's] information[.]" ***Id.*** at 41,43. He, thus, concludes, that the court should not have permitted Lieutenant Mitchell to rely on the Google location data in preparing his expert report.[9] ***Id.***

Pursuant to Rule 703, "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Pa.R.E. 703. The Rule further provides that "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." ***Id.***

In explaining its reasons for overruling Appellant's objection to Lieutenant Mitchell's expert testimony, the trial court, applying Rule 703, observed that: "Lieutenant Mitchell was qualified as an expert in historical call analysis, the Google GPS location records are records ordinarily relied upon by similar experts, and he was made aware of this information when it was provided by Google." Trial Ct. Op., 1/13/23, at 28. Our review confirms that, in conformance with Rule 703, Lieutenant Mitchell prepared his expert report and testimony based on data which Google made him aware of and which is regularly relied on by similar experts.

---

[9] Appellant also claims that the trial court erred in permitting the jury to consider Lieutenant Mitchell's testimony without any cautionary instruction that the testimony should not be considered substantive evidence of guilt. Appellant's Brief at 43. Following our review of the notes of testimony from Appellant's trial, we conclude that Appellant has waived this claim by not requesting a cautionary instruction at trial. ***See Commonwealth v. Houck***, 102 A.3d 443, 451 (Pa. Super. 2014) ("[T]he failure to make a timely and specific objection before the trial court at the appropriate stage of the proceedings will result in waiver of the issue.").

Notwithstanding that Lieutenant Mitchell's expert opinion clearly satisfied Rule 703, Appellant attempts to impose additional criteria for its admissibility, namely, that Lieutenant Mitchell knows "how Google's GPS location information is obtained, stored and/or verified for accuracy" and something "about Google's proprietary information." Rule 703 does not impose this burden on an expert witness. Thus, following our review, we find no reason to conclude the court's ruling resulted from an abuse of discretion. This claim, therefore, fails.

**E.**

In his final two issues, Appellant claims that the trial court abused its discretion in precluding him from testifying about statements he alleges Mr. Marche made to him and, in so doing, denied him from presenting a full and fair defense. Appellant's Brief at 44-51. He asserts that the court should have permitted him to testify that: (1) Mr. Marche told him on the night of the murder that he wanted to borrow Appellant's Cadillac in order to "see a broad and take care of some business," and (2) the following day that Mr. Marche "did some fucked up shit" and "it's better you not know about it." *Id.* at 44. Appellant argues those statements are admissible pursuant to the "course of conduct" exception to the hearsay exclusion rule[10] because he did not offer

---

[10] The "course of conduct" exception to the hearsay exclusion rule applies when a witness offers a statement to explain his or her actions. *Commonwealth v. Rega*, 933 A.2d 997, 1017 (Pa. 2007). However, it is often not necessary for a witness to provide full and explicit statements to explain course of conduct behavior. *See*, *e.g.*, *Commonwealth v. Palsa*,

them for their truth, but rather to explain: (1) that he believed Mr. Marche had a non-criminal purpose for borrowing his Cadillac; (2) the effect the statements had on him; (3) his subsequent course of conduct, including why he maintained close contact with Mr. Marche and why he lied to police about loaning Mr. Marche his Cadillac; and (4) why he had come to believe that Mr. Marche had done something bad with his Cadillac.[11] *Id.* at 45, 47.

With respect to his constitutional claim that the court deprived him of his due process right to present a full and fair defense, Appellant argues that the court's ruling forced him to "testify in a piecemeal fashion" in violation of his due process rights. *Id.* at 49. He asserts that the court denied him his "right to vigorously counter" the Commonwealth's evidence that Appellant communicated with Mr. Marche around the time of the murder and during the weeks and months of the police investigation. *Id.* at 50.

---

555 A.2d 808, 811 (Pa. 1989) ("[T]he police easily could have explained the course of their conduct . . . without resorting to the full and explicit statements given by [the informant]."). Moreover, the course of conduct exception is not a license to admit any and all statements that may have impacted the witness's course of conduct. *See id.* ("[T]here is often a subtle, and elusive, difference between the use of statements to establish the truth of facts averred by one not in court and their use to establish a course of conduct[.]").

[11] Appellant also asserts that the trial court erred in considering the statements under the "state of mind" exception to the rule precluding the admission of hearsay statements and not under the "course of conduct" exception. Appellant's Brief at 46-47. This claim lacks merit given that, at trial, Appellant specifically argued that the statements were admissible under the "state of mind" exception. N.T. Trial, 9/20/22, at 230-31, 238, 242.

In explaining its decision to disallow Appellant from testifying about certain specific statements he alleges Mr. Marche made to him, the trial court opined as follows:

> [Appellant's] proposed testimony, recalling [Mr.] Marche's statements that he needed [Appellant's] car to take care of something by himself and that it was something bad he did not want [Appellant] to know about, was being offered to show that [Mr.] Marche acted alone, it was something bad, and that [Appellant] did not know about it. In addition, [Appellant] was able to describe through his own testimony that he loaned the car to [Mr.] Marche, how [Mr.] Marche looked when he returned the vehicle, and his subsequent actions with police when his vehicle was connected to the murder.

Trial Ct. Op. at 33-34.

As set forth above, Appellant argues that the court's ruling precluded him from offering testimony that explained his beliefs and actions. Following our review of the Notes of Testimony, we conclude that the record belies this claim.

Specifically, our review indicates that, at trial, Appellant testified that he loaned his Cadillac to Mr. Marche. N.T. Trial, 9/22/20, at 169. He also testified that when he gave Mr. Marche the car, Mr. Marche had a backpack, which was unusual. *Id.* at 171.

With respect to seeing Mr. Marche later on the night of the murder, Appellant testified that Mr. Marche looked "distraught" and was "rocking back and forth like in a daze." *Id.* at 177-78.

Appellant testified that he visited Mr. Marche the next day to "see what was wrong with him." *Id.* at 180. He described Mr. Marche "uncomfortable,"

"serious," and not wanting to talk, as if something was bothering him. *Id.* at 183-84. He also explained that he subsequently spoke with Mr. Marche by phone numerous times between the date of the murder and February of 2021, but that he never again mentioned the events of November 29, 2020. *Id.* at 185.

Finally, Appellant testified that when police officers approached him and told him that his Cadillac had been involved in a murder, he thought of Mr. Marche. *Id.* at 186-87. He explained that he decided not to tell the officers that Mr. Marche had borrowed his car because he was afraid of retaliation from Mr. Marche, and he thought he would be accused of a crime. *Id*. at 198-99. Appellant further testified that he "kept [Mr. Marche] close" because he believed that Mr. Marche had set him up to take responsibility for the murder. *Id.* at 199. Appellant believed this because, even though Mr. Marche had five cars, he borrowed Appellant's Cadillac. *Id.* at 200.

As the trial court observed, and the Notes of Testimony confirm, Appellant's testimony at trial pertained to each topic he now alleges the court's ruling prevented him from offering. Thus, even if the trial court erred in precluding Appellant from testifying with respect to Mr. Marche's specific statements, Appellant did not suffer any prejudice as a result of the ruling. Accordingly, any error would be harmless. *See Commonwealth v. Markman*, 916 A.2d 586, 603 (Pa. 2007) (explaining that an error is harmless, in part, if "the error did not prejudice the defendant or the prejudice was *de minim*[*i*]s[.]" This claim, thus, fails.

Appellant's due process claim that he was unable to "explain his subsequent course of conduct in the context of [Mr.] Marche's communications to him and their impact on him," and his course of conduct after the night of the killing likewise fails. Appellant's Brief at 50. As outlined above, Appellant testified at length about each of these topics. Nothing in the Notes of Testimony suggests that the court denied him of the opportunity to "vigorously counter" any of the Commonwealth's evidence or theories of the case. Appellant is, thus, not entitled to relief on this claim.

**F.**

Having found each of Appellant's issues either meritless or waived, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/15/2024